### ARMSTRONG v. COMMISSIONER OF INTERNAL REVENUE (two cases).

#### Nos. 2800, 2801.

Circuit Court of Appeals, Tenth Circuit.

July 6, 1944.

Stephen H. Hart, of Denver, Colo. (James B. Grant and Lewis & Grant, all of Denver, Colo., and Simms, Modrall & Seymour, of Albuquerque, N. M., on the brief), for petitioners.

L. W. Post, of Washington, D. C. (Samuel O. Clark, Jr., Asst. Atty. Gen., and Sewall Key and Helen R. Carloss, of Washington, D. C., on the brief), for respondent.

Before PHILLIPS, HUXMAN, and MURRAH, Circuit Judges.

HUXMAN, Circuit Judge.

These appeals come to us from the United States Tax Court, and involve income taxes for the year 1939. The two cases involve identical questions. They were consolidated before the tax court and also on appeal to this court. The discussion of the facts will be confined to No. 2801, Gayle Geard Armstrong v. Commissioner. The sole question presented is whether income from certain trusts is chargeable to the petitioners as their income.

The decisions of the Tax Court are entitled to great weight and consideration. As to all questions of fact, its findings are conclusive and binding if supported by substantial evidence. On all questions of accounting and methods of procedure for the establishment of a uniform system in the administration of the income tax law, its decisions should control and be respected by courts of law. It is only when a question of law is involved that courts of law should substitute their judgment for that of the tax court when differences of opinion arise. Nor should we restrict and whittle away the field of operation of the tax court by deciding so-called mixed questions of fact and law.

We are of the view that we should substitute our judgment for that of the Tax Court only where the findings of fact clearly are not supported by evidence or where a conclusion of law based thereon is obviously erroneous. This, we think, is the admonition of the Supreme Court in Dobson v. Commissioner, 320 U.S. 489, 64 S.Ct. 239.

Here we have no disputes in the evidence, and no contradictory conclusions of fact that can be drawn from the evidence. We accordingly adopt the findings of fact of the tax court in toto. The finding by the tax court that petitioner in substance was the owner of the trust property is in our view not a finding of fact but a conclusion of law, and the decision in the case turns upon the correctness of that conclusion. For it is obvious that if petitioner re-

mained the substantial owner of this property, or retained any economic interest therein, he is chargeable with the income therefrom.

For many years petitioner[1] and his father had been equal partners under the firm name of Armstrong and Armstrong, and were engaged in road construction and cattle ranching. Petitioner's father died testate June 5, 1937. In his will he directed his executor to carry on the partnership business for one year, and expressed a desire that if the partnership be continued longer than one year, that the business should be incorporated. The original partnership was dissolved on the death of the father. On July 27, 1937, the wife of the deceased and petitioner, the executor of the will, agreed in writing to carry on the business in the same manner as before. In that agreement the interests of the parties in the partnership assets were stated to be as follows: Petitioner, fifty per cent; Clara H. Armstrong, the widow, twenty-five per cent; and petitioner, as executor of the will, twenty-five per cent.

On June 5, 1938, after a discussion of the matter of carrying on the partnership business after the closing of the estate, a new partnership agreement was prepared. It was not executed until October 17, 1938. The new partners were the widow and the four children. Their interests in the new partnership were declared to be as follows: Clara Armstrong, thirty per cent; petitioner, fifty-five per cent; and the three other children, five per cent each.

The five per cent interest which petitioner inherited from his father was separate and apart from his one-half interest in the partnership and he wanted to keep it separate and distinct from the community property interest of himself and his wife in the partnership property. He therefore decided to give the five per cent interest in the partnership property which he inherited from his father to his children, Billie Bert Armstrong, a son, and Gayle Armstrong, a daughter. He discussed the matter with the attorneys for the estate, as well as with the attorneys for the partnership. To effectuate this gift, he established the trust which is involved in this case, June 5, 1938. He set the five per cent interest he received from his father's estate over into the trust for the benefit of his two children, in equal proportions. The creation of the trust was discussed with all of the partners. Most of them saw the trust instrument, and all consented to the trust becoming a member of the partnership. The trust agreement and the new partnership agreement were drawn by the same attorneys at approximately the same time. Petitioner made himself the trustee. The trust instrument gave him absolute power in the management of the trust estate. As trustee he could borrow, mortgage, pledge, transfer in trust, or otherwise encumber the trust estate. He could invest the principal or income of the estate as he saw fit. He could exercise all the powers and privileges of an owner with reference to the trust estate; he could hold the trust estate in his own name or in the name of his nominee or appointee. He could make advances of his own funds to the trust estate for any purpose and have a lien on the trust estate for such advances and be reimbursed out of the trust estate for any money so advanced. All his decisions in all matters concerning the trust estate were final and binding.

It was provided that the entire net income was to accumulate and become a part of the corpus; that the trust was irrevocable and was to terminate when the daughter reached the age of twenty-five years,[2] at which time the estate was to vest equally in the two children, or in the case of the death of one of them, the entire estate was to vest in the survivor upon becoming twenty-five years of age. If both beneficiaries died before the termination of the trust, then the entire estate was to vest in the children's mother. The beneficiaries were restrained from encumbering the estate and it was not subject to their debts and liabilities. The trust instrument was not recorded. Petitioner filed a federal gift tax return.

Petitioner signed the new partnership agreement only in his individual capacity. He did not sign as trustee for the trust. On April 18, 1941, Billie Bert became of age. Petitioner in accordance with a prior decision to terminate the trust as to him, gave him the choice of selling his interest for cash or of becoming a member of the partnership. He elected to become a member of the partnership and petitioner con-

---

[1] Wherever the petitioner is referred to, it will be understood that we refer to petitioner Gayle Geard Armstrong.

[2] At the time of the creation of the trust, the son was 18 years old and the daughter was 13 years old.

veyed his interest in the trust estate to him by deed. Individual federal income tax returns were filed for the year 1939 for petitioner and his two children. Each of the returns of the children reflected the income from the 2½% interest each had in the trust estate. Other transactions entered into the trust relationship. We think that the above statement of fact contains all that is necessary to an understanding of the problems presented by this case. It must be conceded that the trust instrument invested petitioner with absolute power of management and control over the trust estate.

The tax court found and concluded that petitioner's absolute control of management of the trust estate, the short trust period, the family business and relationship, coupled with the fact that the son used some trust funds to defray his expenses at an eastern law school, when all considered together, constituted petitioner in reality the true owner of the trust estate.

The tax court concluded that the case fell within the decision of the Supreme Court in Helvering v. Clifford, 309 U.S. 331, 60 S.Ct. 554, 84 L.Ed. 788. In that case the Supreme Court stressed the close family relationship; the fact that no substantial economic change occurred under the Clifford trust, that while some legal rights were surrendered, when the indirect benefits flowing from the trust through the wife were considered, the trustor had a fair equivalent of what he had before. The court quite rightfully pointed out that these family relationships will be carefully scrutinized and that when it appears that substantially but one economic unit exists, then no devices, no matter how skillfully devised, attempting to set up separate units, will be recognized, even though they are valid under state law.

This is as it should be. But this does not mean that a father may not in good faith make a gift of property to his son under a trust in which he is the trustee and is vested with powers of control and management. Where such powers exist, a critical, analytical search will be made of the trust instrument to surely ascertain that no economic benefit was intended or may inure to the benefit of the trustor, and that such powers of management are for the sole benefit of the trust and not directly or indirectly for the benefit of the creator

of the trust. In Jones v. Norris, 10 Cir., 122 F.2d 6, 11, we said:

"We do not understand that the power of management, however unlimited, may operate to bring the grantor within the sweeping provisions of Section 22(a) [26 U.S.C.A. Int.Rev.Acts, page 669], if by such powers he cannot derive any economic benefit therefrom, * * * the grantor retained neither the power to revoke, revest or revert either the corpus or the income."

See also Hogle v. Commissioner, 10 Cir., 132 F.2d 66.

There are marked differences between this trust and the one in the Clifford case. There the beneficiary was a wife and the trust period was only for five years, at which time the property came back to the creator of the trust. Here the property never reverted. There was no way by which petitioner could be reinvested of any interest in the corpus by operation of the trust declaration. Nor was there any way in which he could have or derive a personal benefit from the income of the estate. He had irrevocably divested himself of all interest in the property. It is true that the declaration of the trust was for a fairly short period of time, but there was a good and valid reason for this. At the end of the twelve year period the daughter, who was the younger of the two children, would be twenty-five years of age. Petitioner thought that at that time she would be sufficiently mature to manage her own property. This is quite different from the situation in the Clifford case where the wife only received the income of the trust for five years, at which time the property reverted. Neither does the fact that the son was permitted to draw on the trust account while he attended law school in the east indicate that this arrangement was made for the economic benefit of the father. In the first place, the father was not liable for the support of his son at law school when he was able to support himself. Desch v. Desch, 55 Colo. 79, 132 P. 60. Furthermore, the father contributed large sums to the support of his son. He bought him an automobile and gave him large sums of money at different times. Petitioner stated that the reason he gave the son the right to draw on these funds was that he wanted him to learn management and the value of property. They had a large and extensive

business in which the son was a partner by virtue of the trust, and in which the father hoped that he would take an active interest and ultimately become the manager thereof. Under all the circumstances of this case, this explanation is a reasonable one.

While the trust instrument gave petitioner absolute power of management of the trust estate, it must be remembered that petitioner was the active manager of the partnership business. His powers of management as trustee were in line with those which he exercised as general manager of the partnership business. Neither do we attach any significance to the fact that he did not affix his signature as trustee to the partnership agreement. This was not required by law, and he gave a plausible explanation as to why it was not done. All the members of the partnership knew that the trust was a partner and that the five per cent interest belonged to the trust estate.

The tax court also stressed the fact that the control of the five per cent interest placed in the trust was beneficial to petitioner, in that it gave him control of a majority interest in the partnership estate and thus enabled him to control the partnership. Every member of a partnership has an equal voice in the management of the partnership business, irrespective of the amount of interest. Partnerships act by the decision of a majority of the partners, 40 Am.Jur., Partnership, § 116, and not by a majority in interest. This is the general rule in the absence of an agreement to the contrary. 40 Am.Jur., Partnership, § 115. The management and control of the interest of the trust in the partnership gave petitioner no greater voice in the management of the partnership than he had without it.

It is our conclusion that petitioner divested himself of all economic benefit or interest in the trust estate or in the income therefrom, and that he was not in **any** sense the owner of the trust estate. To hold otherwise would be to say that a father cannot by deed of trust, no matter how absolute, give property to a child if he himself is the trustee and retains absolute control and management for the benefit of the estate.

Reversed and remanded, with directions to proceed in accordance with the views expressed herein.