JUAN LUIS BOSCIO, demandante y recurrente, *v.* SECRETARIO DE HACIENDA, demandado y recurrido.

*Número:* 12567    *Resuelto:* 26 de enero de 1962

414

*Córdova & González* y *Jorge L. Córdova, Jr.,* abogados del recurrente; *Hiram R. Cancio, Secretario de Justicia, Arturo Estrella, Secretario Auxiliar, Stanley R. Segal, Procurador Auxiliar* y *Marcos Feliciano Crespo,* abogados del recurrido.

Sala integrada por el Juez Presidente señor Negrón Fernández como Presidente de Sala y los Jueces Asociados Señores Blanco Lugo y Dávila.

EL JUEZ ASOCIADO SEÑOR BLANCO LUGO emitió la opinión de'. Tribunal.

Por escritura número 50 de fecha 1 de julio de 1938 otorgada ante el Notario don Felipe Colón Díaz se constituyó una sociedad mercantil en comandita denominada Monllor y Boscio, Sucesores, S. en C., con un capital de $223,179.74,

del cual correspondía $176,185.96 al único socio gestor don Juan Luis Boscio. Cuatro años después, en 21 de septiembre de 1942, el recurrente y su esposa doña Herminia Monllor, mediante el otorgamiento de la correspondiente escritura pública—número 73 ante el Notario don Diego Guerrero Noble—transfirieron, con efecto retroactivo al día 1 de julio anterior, a unos fideicomisos establecidos a favor de sus hijos tres participaciones de $44,046.49 cada una, o sea un total de $132,139.47, del capital que les correspondía en dicha sociedad. Como parte de un plan de reorganización, en 31 de octubre de 1942 la sociedad permutó la mayor parte de su activo y negocios a una corporación organizada bajo el nombre de Monllor y Boscio Sucrs., Inc. Recibió 4,352.83 acciones comunes, que fueron distribuidas entre los socios en la proporción correspondiente a su participación en el capital social. Al fiduciario don Enrique Petrovich Boscio le correspondió el sesenta por ciento de las acciones.

Para los años 1945 a 1951 el fiduciario percibió ingresos según se detalla a continuación:

| 1945: | $9,681.41 | 1948: | $10,290.30 |
|-------|-----------|-------|------------|
| 1946: | 4,647.42  | 1949: | 742.84     |
| 1947: | 293.40    | 1950: | 927.32     |
|       | 1951:     | $8,871.38 |        |

De estas sumas, el fiduciario distribuyó a los beneficiarios $4,800, $2,400 y $2,400 en los años 1945, 1946 y 1948. Retuvo el balance de los ingresos conforme a los términos del fideicomiso y satisfizo la correspondiente contribución sobre ingresos. Los beneficiarios también rindieron declaración por los ingresos que tuvieron en los años indicados.

El Secretario de Hacienda determinó que el importe total de los ingresos de los fondos de fideicomiso eran atribuibles al padre fideicomitente, y después de conceder los créditos correspondientes por las contribuciones de ingresos satisfechas por el fiduciario y los beneficiarios, le notificó deficiencias para los años en controversia. El tribunal de instancia

sostuvo la actuación del Secretario apoyándose en la opinión dictada en *Alvarez* v. *Secretario de Hacienda*, 80 D.P.R. 16 (1957). Al efecto indicó que: "No hay prueba de que, como cuestión de realidad, y no obstante el documento otorgado, los fideicomitentes no siguieron en la posesión y control de su capital en la sociedad Monllor y Boscio, Sucrs., siendo el demandante único gestor y administrador de dicho capital. (¹) No hay prueba de que como cuestión de realidad, se sacaran esos fondos del haber social y se invirtieran en otra forma, o adquirieran un perfil propio en el campo de los negocios bajo la administración del fiduciario."

## I

Para un mejor entendimiento a los fines de poder resolver la controversia es preciso que hagamos referencia 1) a los términos pertinentes de la escritura de fideicomiso, y, 2) a las disposiciones de ley aplicables.

1. Como expresamos anteriormente, los tres fondos de fideicomiso se crearon mediante escritura pública por los esposos Boscio-Monllor, como fideicomitentes, "con el propósito de proveer para el bienestar de sus hijos" y asegurar su independencia económica. Los beneficiarios eran los tres hijos menores de los fideicomitentes llamados Roberto, Gladys y Juan Luis, quienes a la sazón contaban diecisiete, trece y tres años de edad respectivamente. Para el caso de muerte de uno o más de los fideicomisarios, se determinó que el fondo en fideicomiso y las ganancias acumuladas se pagarían al beneficiario o a los beneficiarios sobrevivientes, por partes iguales en este último caso. Se designó fiduciario a don Enrique Petrovich Boscio, primo hermano del recurrente, socio comanditario de la anterior sociedad y accionista de la presente corporación, y, además, empleado de ésta. Se

---

(¹) Evidentemente el tribunal se refería al momento de constitución de los fideicomisos, ya que la controversia envuelta en el presente litigio se refiere a años contributivos—1945 a 1951—en que la sociedad se había extinguido y había sido sustituida por la corporación dentro del plan de reorganización a que hemos hecho referencia.

proveyó que en caso de muerte, renuncia o incapacidad de dicho fiduciario, le sustituiría en primer término el fideicomitente Boscio, y en segundo término—al acaecimiento de cualquiera de los sucesos indicados—la otra fideicomitente señora Monllor de Boscio.

Los fideicomisos se crearon con carácter irrevocable, reservándose los fideicomitentes únicamente la facultad de transferir otros bienes al fideicomiso, en cuyo caso estos bienes adicionales quedarían sujetos a los mismos términos y condiciones que los originalmente fideicomitidos.

Se efectuó la transferencia a favor del fiduciario para que éste "administre, guarde, tenga, retenga, invierta, reinvierta o en cualquier forma disponga de dichos bienes, así como de cualquier otra clase de bienes o propiedades que puedan ser agregados a estos fideicomisos mediante transferencia que a tal efecto hagan posteriormente los fideicomitentes, o en cualquier otra forma, así como también de las rentas, ingresos y ganancias que estos bienes produzcan, incluyendo las ganancias de capital como resultado de la venta, conversión, disposición o liquidación o permuta, o en cualquier otra forma de los bienes fideicomitidos" y quedó plenamente facultado para "invertir, reinvertir, vender, traspasar y permutar por otros bienes o propiedad de cualquier clase, bajo aquellas transacciones, pactos y condiciones que crea adecuados, todos o parte de dichos bienes, así como permutar, si lo cree conveniente, cualquier inversión o invertir y reinvertir cualquier remanente o suma recibida en cualquier permuta o venta de cualesquiera obligaciones, créditos y valores u otra propiedad real o personal, corporal o incorporal, pública o privada, doméstica o extranjera, incluyendo acciones comunes o preferidas de corporaciones privadas o de servicio público o de cualquier propiedad, no importa que ésta no produzca ingresos, ganancia o beneficio a la fecha de su adquisición." Se dispuso además que la administración de los fideicomisos

se llevaría a cabo sujeta a los siguientes términos y condiciones:

"Invertirá y reinvertirá dichos fondos en fideicomiso y cobrará los intereses, dividendos, rentas, beneficios, así como cualquier otra clase de ingresos que éstos produzcan y pagará aquellos intereses, dividendos, rentas, beneficios, ganancias, ingresos y gastos, así como cualquier principal de dichos fideicomisos, llevando cuentas separadas de los ingresos, transacciones, gastos e inversiones de cada uno de dichos fideicomisos, para dar cumplimiento a las siguientes disposiciones:

"(a)—Durante la minoridad del Fideicomisario Roberto Boscio Monllor percibirá éste de las ganancias e ingresos del fondo de su fideicomiso, inclusive las ganancias del capital, una suma que no excederá de DOS MIL CUATROCIENTOS DÓLARES ($2,400) anuales, la que podrá ser satisfecha mensualmente hasta la cantidad de DOSCIENTOS DÓLARES ($200) o periódicamente, a buen juicio del Fiduciario.

"El remanente de las ganancias anuales, inclusive cualquier ganancia del capital, podrá ser invertido y reinvertido, y permanecerá acumulado en el fideicomiso para serle entregado al Fideicomisario a opción del Fiduciario, cuando dicho Fideicomisario contraiga matrimonio, termine sus estudios profesionales o llegue a su mayoría de edad.

"Tres años después de haberle entregado el total de las ganancias acumuladas, el Fiduciario le hará entrega además del fondo del Fideicomiso (Trust Fund) inclusive cualquier ganancia que se hubiere acumulado durante estos tres años.

"(b)—Cuando la Fideicomisaria Gladys Boscio Monllor cumpla la edad de quince años, percibirá de las ganancias e ingresos del fondo de su fideicomiso, inclusive las ganancias del capital, una suma que no excederá de dos mil cuatrocientos dólares ($2,400.00) anuales, la que podrá ser satisfecha mensualmente hasta la suma de doscientos dólares ($200.00) o periódicamente, a buen juicio del Fiduciario.

"El remanente de las ganancias anuales, inclusive cualquier ganancia del capital, podrá ser invertido y reinvertido y permanecerá acumulado en el fideicomiso para serle entregado a la fideicomisaria dicho remanente, en su totalidad cuando, a discreción del Fiduciario, ésta llegue a su mayoridad, o termine sus estudios profesionales o contraiga matrimonio.

"(c)—Cuando el Fideicomisario Juan Luis Boscio Monllor cumpla la edad de diez y seis años percibirá de las ganancias e ingresos del fondo de su fideicomiso, inclusive las ganancias procedentes del capital o corpus, una suma que no excederá de DOS MIL CUATROCIENTOS DÓLARES ($2,400) anuales, la que podría ser satisfecha mensualmente hasta la suma de DOSCIENTOS DÓLARES ($200) o periódicamente, a buen juicio del Fiduciario.

"El remanente de las ganancias anuales procedentes de su fideicomiso, inclusive cualquier ganancia del capital podrá ser invertido o reinvertido y permanecerá acumulado en el fideicomiso para serle entregado dicho remanente en su totalidad al dicho Fideicomisario, a discreción del Fiduciario, cuando éste llegue a su mayoridad o termine sus estudios profesionales o contraiga matrimonio.

". . . El pago de las ganancias acumuladas procedentes de estos tres fideicomisos, a los fideicomisarios, cuando, a juicio del Fiduciario lleguen éstos a su mayoridad, contraigan matrimonio o terminen sus estudios profesionales podrá ser efectuado en efectivo, en especie o en ambos.

". . . Si la ganancia neta de cada uno de los tres Fideicomisos por cualquier año fiscal fuere insuficiente para pagar a los Fideicomisarios su asignación para dicho año, el Fiduciario queda facultado para cancelar dichas anualidades o para reducirlas hasta el montante de la ganancia neta anual habida."

En cuanto a acciones en corporaciones se autorizó expresamente al fiduciario para que ejecutara el derecho al voto en las reuniones de accionistas "usando su propio juicio y discreción en aquellos asuntos a votar".

Finalmente los fideicomitentes renunciaron a cualquier derecho que pudieran conferirle las leyes del país con respecto "a las ganancias procedentes de cada uno de los fideicomisos".

2. Las disposiciones de la Ley de Contribución sobre Ingresos de 1924 que son aplicables para determinar la responsabilidad contributiva del recurrente son las secciones 15(a), 20(g) y 20(h), 13 L.P.R.A. secs. 694(a), 699(g) y 699 (h),(2) que leen como sigue:

---

(2) Estas disposiciones corresponden a las secciones 22(a), 166 y 167 de la Ley Federal de Contribución sobre Ingresos de 1939. Como se indica

## Sección 15 (a)

"El término 'ingreso bruto' incluye ganancias, beneficios o ingresos derivados de sueldos, jornales, o compensación por servicios personales (incluyendo en el caso de funcionarios y empleados del Estado Libre Asociado de Puerto Rico, de los Estados Unidos o de cualquier subdivisión política de los mismos, la retribución que como tales reciban) de cualquier clase y cualquiera que sea la forma en que se pagare, o de profesiones, oficios, industrias, negocios, comercio, o ventas, u operaciones en propiedad bien sea mueble o inmueble, derivado de la posesión, uso o interés en tal propiedad; también de intereses, rentas, dividendos, beneficios de sociedades, valores o de la operación de cualquier negocio explotado con fines de provecho o utilidad, o de ganancias, utilidades e ingresos derivados de cualquier procedencia . . ."

en el escolio 16 de la opinión emitida en *Alvarez* v. *Secretario de Hacienda*, 80 D.P.R. 16, 30, en el año 1943, y como consecuencia de la decisión de *Helvering* v. *Stuart*, 317 U.S. 154 (1942), el Congreso adicionó el apartado (c) a la sección 167 (26 U.S.C.A., Internal Revenue Acts Beginning 1940, pág. 458) a los efectos de que el ingreso de un fideicomiso no será incluible en el ingreso bruto del fideicomitente por el mero hecho de que dicho ingreso pueda utilizarse para alimentos de un menor de edad excepto hasta el importe de dicho ingreso que de hecho sea así utilizado. Cf. *Roig et al.* v. *Secretario de Hacienda*, 84 D.P.R. 147 (1961) y *Serrallés Galiano* v. *Secretario de Hacienda*, 84 D.P.R. 11 (1961). Nuestra Asamblea Legislativa no adoptó este inciso hasta la aprobación de la Ley de Contribución sobre Ingresos de 1954, sección 167 de la Ley Núm. 91 de 29 de junio de 1954, (13 L.P.R.A. sec. 3167).

La Ley Federal de Contribución sobre Ingresos de 1954 contiene en la subparte E del subcapítulo J las disposiciones aplicables a los casos en que se atribuye a los fideicomitentes el ingreso o utilidades de un fideicomiso, 26 U.S.C. secs. 671 a 678, especialmente las secciones 676 y 677 que corresponden a las secciones 166 y 167 de la ley de 1939. Véanse además, las secciones 1.676(a), 1.676(b), 1.677(a) y 1.677(b) del Reglamento Federal vigente, Federal Tax Regulations, 1961, págs. 864 a 867.

En cuanto a ingresos de fideicomisos para los años contributivos desde 1954 en adelante, véanse las secciones 166 y 167 de la Ley Núm. 91 de 29 de junio de 1954, 13 L.P.R.A. secs. 3166 y 3167 y los artículos 22(a)-21, 166-1, 167-1 y 167-2 del Reglamento de 1954, aprobado en 11 de julio de 1937, 13 R. & R.P.R. secs. 3022(a)-U, 3166-1, 3167-1 y 3167-2. Estos artículos del Reglamento de 1954 corresponden literalmente con los del Reglamento Federal bajo la Ley de 1939, o sea, las secciones 39.22(a)-21, 39.166, 39.167-1 y 39.167-2; Federal Tax Regulations, 1956, págs. 504-509 y 1010-1013.

*Sección 20 (g)*

"Cuando el cesionario de un fideicomiso por sí o en unión a cualquier persona que no sea un beneficiario del fideicomiso tiene, en cualquier tiempo durante el año contributivo, la facultad de concederse a sí mismo título de propiedad de cualquier parte de los bienes del fideicomiso, entonces el ingreso de tal parte del fideicomiso correspondiente a dicho año contributivo deberá ser incluido al computarse el ingreso neto del cesionario."

*Sección 20 (h)*

"Cuando cualquier parte del ingreso de un fideicomiso puede ser, a discreción del cesionario del fideicomiso, por sí o en unión de cualquier persona que no sea un beneficiario del fideicomiso, distribuida al cesionario o retenida o acumulada para serle distribuida en lo futuro, o cuando cualquier parte del ingreso de un fideicomiso es o puede ser aplicada al pago de premios sobre pólizas de seguro sobre la vida del cesionario (excepto pólizas de seguro pagaderas irrevocablemente a los fines y en la forma especificados en el párr. (10), subdivisión (*a*) de la sec. 695 de este título), dicha parte del ingreso del fideicomiso deberá ser incluida, al computarse el ingreso neto del cesionario."

Igualmente es pertinente considerar el artículo 207 del Reglamento Núm. 1 promulgado bajo la Ley de Contribución sobre Ingresos de 1924, (³) que estuvo vigente hasta la aprobación de la nueva ley en 1954. Decía así:

---

(³) Negociado de Suministros, Imprenta y Transportación, 1926, pág. 135.

La versión original, que fue adoptada en el idioma inglés, leía como sigue:

"Article 207.—Income of Trusts Taxable to Grantor.—In the case of certain trusts which are in whole or in part subject to revocation by the grantor, or which are for the benefit of the grantor, the income of the trust is to be included in computing the net income of the grantor. The income of such trusts must be so included, whether or not the trust was created before the enactment of this Act. The cases in which the income of the trust is to be included, in whole or in part, in computing the net income of the grantor are as follows:

"(1) Where the grantor of the trust has, at any time during the taxable year, either alone or in conjunction with a person not a beneficiary of the trust, the power to revest in himself title to any part of the corpus of the trust, the income of such part of the trust for that taxable year shall be included in computing the net income of the grantor. The grantor shall include in his income the entire gross income of such part of the trust, and shall be entitled to such deductions with reference to such

*"Ingresos de Fideicomisos Tributables al Fideicomitente.—* En el caso de determinados fideicomisos que puedan ser revocados, total o parcialmente, por el fideicomitente, o que fueren establecidos para beneficio del fideicomitente, los ingresos del fideicomiso deberán ser incluidos al computarse el ingreso neto del fideicomitente. Los ingresos de dichos fideicomisos deberán ser incluidos aunque el fideicomiso se hubiere constituido o no antes de la aprobación de esta ley. Los casos en que los ingresos del fideicomiso serán incluidos, en todo o en parte, al computarse el ingreso neto del fideicomitente, serán como sigue:

"(1) Cuando el fideicomitente del fideicomiso, en cualquier momento durante el año contributivo, por sí o en unión de cualquier persona que no sea un beneficiario del fideicomiso, tuviere la facultad de hacer revertir el título de propiedad de cualquier parte de los bienes fideicomitidos, el ingreso de tal parte del fideicomiso correspondiente a dicho año contributivo deberá ser incluido al computarse el ingreso neto del fideicomitente. El fideicomitente deberá incluir en su ingreso todo el ingreso bruto de tal parte del fideicomiso y tendrá derecho a aquellas deducciones en conexión con dicho ingreso a que hubiere tenido derecho si el fideicomiso no se hubiere constituido. Cuando el fideicomitente renuncia durante dicho año contributivo a su facultad de reversión del título sobre los bienes del fideicomiso, el ingreso del fideicomiso será tributable al fideicomitente solamente por el período durante el cual él tuvo dicha facultad.

---

income as he would have been entitled to if the trust had not been created. Where the grantor relinquishes during the taxable year his power to revest in himself title to the corpus of the trust, the income of the trust shall be taxable to the grantor only for the period during which he had such power.

"(2) Where any part of the income of the trust may, in the discretion of the grantor of the trust, either alone or in conjunction with any person not a beneficiary of the trust, be distributed to the grantor or be held or accumulated for future distribution to him; and

"(3) Where any part of the income of the trust is or may be applied to the payment of premiums upon policies of insurance on the life of the grantor, other than policies irrevocably payable for the purposes and in the manner specified in section 16(a) (10), such part of the income of the trust shall be included in computing the net income of the grantor.

"The term 'beneficiary' as used in this article includes any person entitled to an interest in the income or the principal of a trust, but does not include one having merely a nominal interest in the income of principal."

"(2) Cuando cualquier parte del ingreso del fideicomiso puede ser, a discreción del fideicomitente por sí o en unión de cualquier persona que no sea un beneficiario del fideicomiso, distribuida al fideicomitente o retenida o acumulada para serle distribuida en el futuro; y

"(3) Cuando cualquier parte del ingreso de un fideicomiso es o puede ser aplicada al pago de primas sobre pólizas de seguro sobre la vida del fideicomitente, que no sean pólizas pagaderas irrevocablemente a los fines y en la forma especificada en la Sección 16 (a) (10), dicha parte del ingreso del fideicomiso deberá ser incluida al computarse el ingreso neto del fideicomitente.

"El término 'beneficiario' tal como se usa en este artículo incluye cualquier persona con derecho a una participación en el ingreso o en los bienes de un fideicomiso, pero no incluye a una persona con un mero interés nominal en el ingreso o los bienes del fideicomiso."

## II

Como podrá determinarse por una lectura de las disposiciones transcritas, los ingresos de un fideicomiso pueden ser atribuidos al fideicomitente a) cuando éste conserva la facultad de hacer revertir a su favor el caudal del fideicomiso—sección 22 (g)—; b) cuando de acuerdo con los términos del fideicomiso los ingresos o utilidades puedan ser entregados directamente al fideicomitente, o acumulados para serle entregados en el futuro, o utilizados para el pago de primas de seguro sobre su vida—sección 22 (h)—; y, c) cuando se trata de fideicomisos en los cuales el fideicomitente se ha reservado un control efectivo en relación con los bienes fideicomitidos, su disposición y los ingresos que éstos produzcan—sección 15 (a). Estos últimos se conocen en la jurisdicción federal como "Clifford trusts" y "Section 22 (a) trusts", debido a que recibieron la sanción judicial definitiva en *Helvering* v. *Clifford*, 309 U.S. 331 (1940) y se justifica la imposición de contribución bajo la definición general de ingreso bruto contenida en la sección mencionada. (⁴)

---

(⁴) Las limitaciones de tiempo que nos impone nuestro congestionado calendario nos impiden una exposición extensa y completa de la evolución

Generalmente la determinación sobre la inclusión en el ingreso bruto del fideicomitente de los ingresos y utilidades del fideicomiso descansa en un análisis de los términos del documento de constitución del fideicomiso y de las circunstancias que rodean su creación y forma de operar. *Holdeen v. Ratteree*, 270 F.2d 701 (CCA 2, 1961) ; *Stockstrom v. Commissioner*, 151 F.2d 353 (CCA 8, 1945) ; *Miller v. Commissioner*, 147 F.2d 189 (CCA 6, 1945) ; *George v. Commissioner*, 143 F.2d 837 (CCA 8, 1944) ; *Commissioner v. Katz*, 139 F.2d 107 (CCA 7, 1943). Deben considerarse en conjunto todos los factores y elementos, pues no existe en verdad un hecho específico que pueda señalarse como decisivo por sí solo. Deseamos anticipar que la existencia de una relación familiar no es índice inexorable de que el fideicomitente conserva el control sobre el caudal del fideicomiso y sus ingresos, aunque es una circunstancia que debe considerarse. *Kay v. Commissioner*, 178 F.2d 772 (CA 3, 1950) ; *Anderson v. Commissioner*, 164 F.2d 870 (CCA 7, 1947) ; *Commissioner v. Newman*, 159 F.2d 848 (CCA 2, 1947) ; *Cushman v. Commissioner*, 153 F.2d 510 (CCA 2, 1946). Examinemos, pues, los fideicomisos del presente caso.([5])

a—Bajo los términos de los fideicomisos, el caudal del fideicomiso no puede revertir al recurrente. No sólo se dispone que la transferencia es irrevocable, sino que tres años

y desarrollo de estos fideicomisos en Derecho contributivo federal. Véanse, Mertens, *Law of Federal Income Taxation* (1957), vol. 6, secs. 37.39 a 37.45 y sec. 37.47; Nossaman, *Trust Administration and Taxation* (1952), vol. 2, secs. 709 a 711; Kennedy, *Federal Income Taxation of Trusts and Estates* (1948), secs. 6.01 a 6.30A; Paul, *Trusts and Federal Taxation*, 31 Taxes 608 (1953) ; Friedland, *Irrevocable Trusts*, 28 Taxes 115 (1950) ; Holzman, *Helvering v. Clifford. Is the Grantor of a Trust the Owner of the Corpus?* 26 Taxes 1067 (1948) ; Magill, *What Shall We Do With the Clifford Case?* 23 Taxes 290 (1945) ; Notas, 20 So. Cal. L. Rev. 392 (1947) ; 18 Texas L. Rev. 478 (1941) ; 55 Harv. L. Rev. 295 (1941).

([5]) Este caso fue sometido por las partes mediante una estipulación de hechos y la presentación de copias de la escritura sobre constitución de los fideicomisos, la aclaración de ésta, y la de constitución de la sociedad Monllor y Boscio, Sucrs. S. en C. En la primera parte de esta opinión hemos hecho referencia a los hechos que son necesarios para resolver la controversia.

después de habérsele hecho entrega a los fideicomisarios de las ganancias y utilidades acumuladas "el fiduciario le hará entrega además del fondo del fideicomiso (trust fund) inclusive cualquier ganancia que se hubiere acumulado durante estos tres años".(6) Tampoco el fideicomitente adquiere derecho alguno sobre el caudal en caso de muerte de cualesquiera de los fideicomisarios. Siendo ello así, no es aplicable la sección 22(g) ni el artículo 207(1) del Reglamento de 1924. ■

b—El fideicomitente no recibe directamente las ganancias y utilidades producidas por los fideicomisos, ni éstas se acumulan para serle entregadas en el futuro, sino que la acumulación que se autoriza es para los fines de reinversión; y al acaecimiento de los sucesos mencionados anteriormente, para ser entregados a los fideicomisarios. No es, por tanto, aplicable la sección 22(h) ni el artículo 207(2) del Reglamento de 1924, excepto en la forma indicada en el siguiente párrafo. Además, en *Roig et al.* v. *Secretario de Hacienda*, 84 D.P.R. 147 (1961) sostuvimos que el usufructo legal concedido a los padres sobre los bienes de los hijos es renunciable, y en el presente caso medió renuncia expresa de tal derecho por los fideicomitentes, por lo cual no puede, como en *Álvarez* v. *Secretario de Hacienda*, 80 D.P.R. 16 (1957), aplicarse el artículo 155 del Código Civil, 31 L.P.R.A. sec. 612. ■

Ahora bien, en *Álvarez* v. *Secretario de Hacienda*, 80 D.P.R. 16, 30 (1957) indicamos que la doctrina enunciada por el Tribunal Supremo federal en *Helvering* v. *Stuart*, 317 U.S. 154 (1942) al efecto de que bajo una disposición en un documento de constitución de fideicomiso de que el ingreso del mismo podría, a discreción de los fiduciarios, usarse para alimentos de los hijos menores del padre fideicomitente, la

---

(6) En la escritura original de constitución de los fideicomisos no se hizo referencia a la entrega final del caudal a los beneficiarios Gladys y Juan Luis Boscio Monllor, pero esta omisión fue subsanada posteriormente mediante el otorgamiento de un acta aclaratoria—escritura número 141 de 22 de septiembre de 1947 ante el Notario don Diego Guerrero Noble.

mera posibilidad del uso del ingreso para relevar a éste, por tanto, de su obligación legal de proveer alimentos es suficiente para incluir todos los ingresos del fideicomiso en el ingreso bruto del fideicomitente, (7) es de aplicación a casos que surjan bajo nuestra sección 20 (h), o sea, a los ingresos de un fideicomiso entre 1928 y 1954. Aunque en el presente caso la escritura de fideicomiso no hace expresa referencia al hecho de que los ingresos del fideicomiso puedan utilizarse para sufragar los alimentos de los hijos, surge claramente que los fideicomitentes señalaron cierta parte de los mismos para ser entregados anualmente—bajo ciertas circunstancias que no es necesario exponer—a los fideicomisarios. En cuanto a estas cantidades específicas se refiere no puede eliminarse la posibilidad de que se utilicen para cubrir atenciones de los menores, y en ausencia de prueba de que no se utilizaron para ello, — *Hopkins* v. *Commissioner*, 144 F.2d 683 (CCA 6, 1944) ; cf. *Serrallés Galiano* v. *Secretario de Hacienda*, 84 D.P.R. 11 (1961) ; *Carrión* v. *Secretario de Hacienda*, núm. 596, auto de revisión denegado en 21 de diciembre de 1961— procedía incluir las cantidades efectivamente entregadas a los beneficiarios entre los ingresos del padre contribuyente. Correspondía al recurrente establecer que, aunque sus hijos recibieron esta parte de los ingresos del fideicomiso, cumplió la obligación de alimentar que le impone la ley con sus bienes o ingresos personales. Cf. *Hamiel's Estate* v. *Commissioner of Internal Revenue*, 253 F.2d 787 (CA 6, 1958) ; *Hopkins* v. *Commissioner of Internal Revenue*, 144 F.2d 683, 692 (CCA 6, 1944) ; *Commissioner of Internal Revenue* v. *Katz*, 139 F.2d 107 (CCA 7, 1943). Durante la vista celebrada el día 8 pasado el representante del recurrente así lo aceptó al admitir que esta parte de los ingresos del fideicomiso era

---

(7) Véanse, Anotaciones, *Liability of settler for income tax in respect of trust income applied to relieve him of financial obligation or burden*, 158 A.L.R. 1315, 1324 (1945) ; 132 A.L.R. 819, 834 (1941) ; 109 A.L.R. 1048, 1053 (1937) y 101 A.L.R. 397, 403 (1936) ; Mertens, *op. cit.*, § 37.47 y 37.48.

atribuible al recurrente.(⁸)   Para la situación después de 1954, véase la sección 167 (c) de la Ley 91, supra.   Sin embargo, en cuanto al balance de los ingresos anuales del fideicomiso que tenían un destino específico de acuerdo con los términos de la escritura de constitución—ser acumulados al caudal para ser reinvertidos por el fiduciario y eventualmente entregados a los beneficiarios—(⁹) no existía la posibilidad de que se utilizaran para satisfacer las necesidades de los fideicomisarios, y por tanto, no le sería aplicable la doctrina del caso de *Stuart*.   En vista de ello nos corresponde finalmente determinar si el remanente de las ganancias anuales debe incluirse en el ingreso del recurrente por ser aplicable la sección 15 (a) de la Ley de Contribución sobre Ingresos de 1924.   ■

c—Aún cuando los ingresos de un fideicomiso no se destinen a cubrir obligaciones legales del fideicomitente, si bajo los términos del fideicomiso éste retiene el control tan plenamente que en efecto práctico permanece como dueño del caudal objeto del mismo, el ingreso del fideicomiso es tributable al fideicomitente bajo las disposiciones de la sección 15 (a) mencionada, correspondiente a la sección 22 (a) de la ley federal de 1939. *Helvering* v. *Clifford*, 309 U.S. 331 (1940).   ■

En términos generales, la determinación de si los fideicomisos pueden clasificarse como "Clifford trusts" depende del grado de control que retiene el fideicomitente en relación con el fideicomiso y su operación, así como los beneficios que recibe o puede recibir de la distribución de las ganancias.   Es

---

(⁸) Claramente no podemos extender esta determinación más allá de la fecha en que los fideicomisarios arribaron a la mayoridad: Roberto Boscio Monllor, en 1946, y Gladys Boscio Monllor, en 1950.

(⁹) Aún cuando existía la posibilidad de que los beneficiarios recibieran el importe de las ganancias acumuladas durante la minoridad si contraían matrimonio o terminaban sus estudios profesionales antes de cumplir veintiún años de edad, la ocurrencia de cualquiera de estos dos sucesos hacía cesar igualmente la obligación del padre de suministrar alimentos. Artículos 150 y 239 del Código Civil, 31 L.P.R.A. secs. 569 y 931; *Alcaide* v. *Alcaide*, 30 D.P.R. 458 (1922).

decir, si el fideicomitente retiene un "conjunto de derechos" —"bundle of rights" es la frase que utiliza el Tribunal Supremo federal en la opinión de Clifford—que, por entrañar beneficios directos o indirectos, equivalen en efecto a conservar el dominio económico de los bienes fideicomitidos. Varios factores se consideran al efecto, como por ejemplo, (sin pretender incluirlos todos), 1) el término del fideicomiso, 2) la facultad de sustituir el fiduciario o el fideicomisario; 3) la facultad para intervenir en la distribución o acumulación de las ganancias y utilidades; 4) la facultad para aprobar las gestiones de administración del fiduciario; 5) la reserva del poder para votar por las acciones fideicomitidas, cuando ese fuere el objeto del fideicomiso; 6) la facultad de sustituir los bienes fideicomitidos, o de adquirirlos preferentemente o por una suma inferior a su justo valor, o de tomar dinero a préstamo al fideicomiso; 7) la relación familiar existente entre las partes; 8) la facultad de relevar al fiduciario de cualquier responsabilidad por sus gestiones como tal; 9) la facultad de ordenar la venta de bienes del caudal en fideicomiso, o impedir su venta y disposición. Véanse, Anotaciones, *Liability of settler for income tax in respect of income of short term trust or trust over which he retains control and management*, 132 A.L.R. 844 (1941): 153 A.L.R. 550 (1944); 166 A.L.R. 1308 (1947); *Reservation of settler of power to alter or modify trust provisions as regards distribution among named beneficiaries, as subjecting him individually to income tax*, 163 A.L.R. 750 (1946); *Taxation of income of trust, as affected by provision in trust instrument relating to amendment or modification of trust*, 128 A.L.R. 1181 (1940). Al final de esta opinión se inserta un apéndice que contiene una relación de casos resueltos por las cortes de circuito en los cuales se discutió esta cuestión de control por el fideicomitente y se resolvieron mediante la aplicación de los factores antes mencionados.

En dos ocasiones anteriores hemos considerado la aplicación del caso *Clifford* a situaciones que envolvían fideicomisos y la determinación de si el fideicomitente retenía el grado de control que requerían la inclusión de los ingresos del fideicomiso en su declaración individual. En *Clínica Juliá* v. *Secretario de Hacienda*, 76 D.P.R. 509, 540–541 (1954) indicamos que las circunstancias del caso *Clifford* no concurrían en éste, porque: 1) los fideicomisos eran irrevocables; 2) los esposos Juliá—fideicomitentes—no se reservaron poder o control alguno sobre las propiedades del *trust;* y, 3) ni sobre su administración, inversión o reinversión. Dijimos además—probablemente teniendo en mente las secciones 22 (g) y 22 (h)—que el *corpus* y los ingresos no revertían a ellos al terminar los fideicomisos, sino a los beneficiarios. Como podrá observarse todas estas circunstancias del caso de *Juliá* concurren en el presente caso de *Boscio*. En *Álvarez* v. *Secretario de Hacienda*, 80 D.P.R. 16, 32–33 (1957) aplicamos el caso de *Clifford* invocando las disposiciones de los artículos 154 y 155 del Código Civil, 31 L.P.R.A. secs. 611 y 612, que confieren al padre la administración y usufructo sobre los bienes de los hijos. Dijimos que, como de acuerdo con los términos de constitución del *trust* se permitía a los beneficiarios retirar las utilidades, y el artículo 154 exigía al padre determinar si ejercitaba este derecho a retirar las utilidades y administrarlas para los beneficiarios menores de edad, esta facultad, unida al usufructo legal, eran suficientes para que el ingreso del fideicomiso fuera tributable al padre. Estas dos circunstancias no están presentes en este caso. Según hemos visto, los beneficiarios no pueden percibir anualmente una suma superior a la fijada al crearse el *trust*, la cual hemos resuelto que por otros motivos debe ser incluida en la declaración del padre. Y aún en cuanto a esta cantidad anual no interviniere en absoluto la discreción paternal para, dentro de su facultad de administrar, exigir la entrega, ya que la disposición del *trust* sobre los

pagos anuales es mandatoria. Respecto al derecho de usufructo ya indicamos que el recurrente lo renunció válidamente, *Roig et al.* v. *Secretario de Hacienda*, 84 D.P.R. 147 (1961).

Examinadas detenidamente todas las cláusulas del fideicomiso, y consideradas en conjunto, no podemos concluir que el recurrente conservó el control tan plenamente que en efecto práctico continuó como dueño del caudal fideicomitido. Surge claramente que no tiene derecho de que el *corpus* revierta a su favor en momento alguno; no tiene intervención en la administración u operación del caudal o las ganancias acumuladas; no se reservó el derecho a votar las acciones que componían el caudal del fideicomiso; no retuvo el derecho de cambiar o sustituir los beneficiarios o el fiduciario; ni podía invadir el caudal para readquirir los bienes que lo constituyen o determinar sobre su disposición.

La mera existencia de una relación familiar entre el fideicomitente y el fiduciario, en ausencia de prueba de que se trata de un subterfugio, no es suficiente para que ignoremos que los ingresos del fideicomiso corresponden a los beneficiarios—*Belaval* v. *Tribunal de Expropiaciones*, 71 D.P.R. 265 (1950)—y los atribuyamos al padre. El fideicomiso presupone una relación de confianza. Es fácilmente explicable que en Puerto Rico, en donde son muy pocas las organizaciones bancarias o de otro género que se dedican activamente a la administración de fideicomisos, se recurra a los familiares y amigos íntimos con la experiencia necesaria para que desempeñen el cargo de fiduciario. Finalmente, el Secretario descansa en que el recurrente podía convertirse en fiduciario en caso de muerte, incapacidad o renuncia de la persona designada en primer término, pero este hecho tampoco es decisivo. *Holdeen* v. *Ratterree*, 270 F.2d 701 (CA 2, 1960); *United States* v. *Mors*, 159 F.2d 142 (CCA 1, 1947); *Hall* v. *Commissioner of Internal Revenue*, 150 F.2d 304 (CCA 10, 1945).

El caso de *Clifford* creó una gran incertidumbre y se convirtió en un campo fértil para litigios. Atendiendo indicaciones contenidas en la opinión del Tribunal Supremo, el Comisionado de Rentas Internas promulgó el llamado Reglamento Clifford, o sea la sección 39.22(a)-21 a que hicimos referencia en el escolio 2 de esta opinión, y que se tradujo literalmente y se incorporó a nuestro reglamento de 1954 como el artículo 22(a)-21. El propósito de esta sección fue fijar normas precisas para la aplicación de la doctrina *Clifford* a distintas situaciones de hecho: "(l)as disposiciones de este artículo, por lo tanto, resuelven las dificultades existentes de aplicación definiendo y especificando los factores que demuestran la retención por el fideicomitente de un control tan completo del fideicomiso que el ingreso resulta tributable a él conforme a la sección 22(a)". Véase, Smith, *How New Regulations Affect the Clifford Case*, 24 Taxes 624 (1946); Guterman, *The New Clifford Regulation*, 1 Taxes L. Rev. 379 (1946); Atlas, *The Clifford Regulations. Genesis of a Concept*, 25 Texas L. Rev. 373 (1946). Si aceptáramos *argüendo* que esta reglamentación administrativa representa la posición del Secretario para la determinación de si nos encontramos en el presente caso ante un *trust* tipo Clifford, tendríamos que llegar a una conclusión negativa, pues los tres factores principales que se nos ofrecen como guía en el artículo 22-b-21 se encuentran conspicuamente ausentes. Dichos factores son:([10])

"(1) el caudal o el ingreso proveniente del mismo revertirá o podrá revertir al fideicomitente después de un término relativamente corto de años;

(2) el disfrute beneficiario del caudal o del ingreso proveniente del mismo está sujeto a un poder de disposición (que no sea uno de los poderes exceptuados) bien sea por revocación, alteración, o por cualquier otro medio, que pueda ser ejercido por el fideicomitente u otra persona que carezca de un interés adverso sustancial en dicha disposición, o por ambos; o

---

([10]) Para una exposición más específica sobre el alcance de estos tres factores, véanse los incisos (c), (d) y (e) de dicho artículo.

(3) el caudal o el ingreso proveniente del mismo está sujeto a un control administrativo que pueda ser ejercido primordialmente para beneficio del fideicomitente."

El tribunal de instancia dio gran importancia a que el recurrente continuó en la "posesión y control" de su capital en la sociedad Monllor y Boscio, Sucrs. y a la ausencia de prueba sobre el hecho de que los fondos se detrajeron del haber social y se invirtieron en otros negocios independientes. Presumiblemente este razonamiento podría extenderse a las acciones corporativas que era lo que componía el caudal del fideicomiso durante los años envueltos en el presente litigio. Aún conviniendo que el recurrente tuviera el control de los negocios de la sociedad originalmente—por su condición de único socio gestor—, y de las gestiones corporativas luego— por su condición de Presidente de Monllor y Boscio, Sucrs., Inc.—, no se deriva de ello necesariamente que lo tuviera del caudal fideicomitido, cf. *Edison* v. *Commissioner of Internal Revenue*, 148 F.2d 810 (CCA 8, 1945) ; *Byerby* v. *Commissioner*, 154 F.2d 879 (CCA 6, 1946). Una vez más llamamos la atención de la ausencia a) de reserva alguna a su favor para ejercitar el derecho al voto de las acciones, y b) de condición alguna en la escritura de constitución que obligara al fiduciario a no disponer de las acciones y de conservarlas en todo momento hasta que se liquidara la corporación. Por el contrario, las facultades conferidas al fiduciario en cuanto a la disposición y enajenación de los bienes fideicomitidos fueron amplias, generosas y prácticamente ilimitadas. Cf. *Tower* v. *Commissioner of Internal Revenue*, 148 F.2d 388, 390-391 (CCA 6, 1945).

En virtud de lo anteriormente expuesto se modificará la sentencia dictada por el Tribunal Superior, Sala de San Juan, en 11 de septiembre de 1957, en el sentido de excluir del ingreso bruto del recurrente cualquier ingreso de los fideicomisos en exceso de las sumas anuales satisfechas a los fideicomisarios; y excluir igualmente cualquier cantidad entre-

gada después de haber llegado a la mayoridad a los benefi-
ciarios Roberto y Gladys Boscio Monllor. *Así modificada,
se confirmará dicha sentencia.*

---

APÉNDICE

*A—Casos en que el Ingreso del Fideicomiso se Atribuyó
al Fideicomitente*

Laganas v. Commissioner, 281 F.2d 731 (CA 1, 1960)
Goemans v. Commissioner, 279 F.2d 12 (CA 7, 1960)
Holdeen v. Ratterree, 270 F.2d 701 (CA 2, 1959)
Barber v. United States, 251 F.2d 436 (CA 5, 1958)
Paster v. Commissioner, 245 F.2d 381 (CA 8, 1957)
Harvey v. Commissioner, 227 F.2d 526 (CA 6, 1955)
Wheeling Dollar Savings & Trust Co. v. Yoke, 204 F.2d 410
(CA 4, 1953)
Ingle v. McGowan, 189 F.2d 785 (CA 2, 1951)
Kay v. Commissioner, 178 F.2d 772 (CA 3, 1950)
Green v. Commissioner, 168 F.2d 994 (CA 6, 1948)
Shapero v. Commissioner, 165 F.2d 811 (CA 6, 1948)
Eisenberg v. Commissioner, 161 F.2d 506 (CCA 3, 1947)
Commissioner v. Newman, 159 F.2d 848 (CCA 2, 1947)
McCutchin v. Commissioner, 159 F.2d 472 (CCA 5, 1947)
Cory v. Commissioner, 159 F.2d 391 (CCA 3, 1947)
Emery v. Commissioner, 156 F.2d 728 (CCA 1, 1946)
Littel v. Commissioner, 154 F.2d 922 (CCA 2, 1946)
Byerby v. Commissioner, 154 F.2d 879 (CCA 6, 1946)
Sinopoulo v. Jones, 154 F.2d 648 (CCA 10, 1946)
Steckel v. Commissioner, 154 F.2d 4 (CCA 6, 1946)
Stockstrom v. Commissioner, 151 F.2d 353 (CCA 8, 1945)
Edison v. Commissioner, 148 F.2d 810 (CCA 8, 1945)
Funsten v. Commissioner, 148 F.2d 805 (CCA 8, 1945)
Miller v. Commissioner, 147 F.2d 189 (CCA 6, 1945)
Losh v. Commissioner, 145 F.2d 456 (CCA 10, 1944)
George v. Commissioner, 143 F.2d 837 (CCA 8, 1944)
Central National Bank v. Commissioner, 141 F.2d 352 (CCA
6, 1944)
Foerderer v. Commissioner, 141 F.2d 53 (CCA 3, 1944)
Jergens v. Commissioner, 136 F.2d 497 (CCA 5, 1943)
Downie v. Commissioner, 133 F.2d 899 (CCA 6, 1943)

434

Williamson v. Commissioner, 132 F.2d 489 (CCA 7, 1942)
Commissioner v. Willson, 132 F.2d 255 (CCA 6, 1942)
United States v. Anderson, 132 F.2d 98 (CCA 6, 1942)
Price v. Commissioner, 132 F.2d 95 (CCA 6, 1942)
Brown v. Commissioner, 131 F.2d 640 (CCA 3, 1942)
Jacobs v. Commissioner, 129 F.2d 99 (CCA 5, 1942)
Commissioner v. Lamont, 127 F.2d 875 (CCA 2, 1942)
Cory v. Commissioner, 126 F.2d 689 (CCA 3, 1942)
Commissioner v. Goulder, 123 F.2d 686 (CCA 6, 1941)
Bush v. Commissioner, 123 F.2d 242 (CCA 8, 1941)
McKnight v. Commissioner, 123 F.2d 240 (CCA 8, 1941)
Helvering v. Elias, 122 F.2d 171 (CCA 2, 1941)
Commissioner v. Woolley, 122 F.2d 167 (CCA 2, 1941)
Commissioner v. Barbour, 122 F.2d 165 (CCA 2, 1941)
Commissioner v. Buck, 120 F.2d 775 (CCA 2, 1941)
White v. Higgins, 116 F.2d 312 (CCA 1, 1940)

*B—Casos en que el Ingreso del Fideicomiso no se Atribuyó
al Fideicomitente*

Hamiel's Estate v. Commissioner, 253 F.2d 787 (CA 6, 1958)
Edwards v. Greenwald, 217 F.2d 632 (CA 5, 1954)
Scofield v. Mauritz, 206 F.2d 135 (CA 5, 1953)
Commissioner v. Goodan, 195 F.2d 498 (CA 9, 1952)
Funk v. Commissioner, 185 F.2d 127 (CA 3, 1950)
Tobin v. Commissioner, 183 F.2d 919 (CA 5, 1950)
Allen v. Nunnally, 180 F.2d 318 (CA 5, 1950)
United States v. Mors, 159 F.2d 142 (CCA 1, 1947)
Thomas v. Feldman, 158 F.2d 488 (CCA 5, 1946)
Commissioner v. Greenspun, 156 F.2d 917 (CCA 5, 1946)
Cushman v. Commissioner, 153 F.2d 510 (CCA 2, 1946)
Kohnstamn v. Pedrick, 153 F.2d 506 (CCA 2, 1945)
Hawkins v. Commissioner, 152 F.2d 221 (CCA 5, 1945)
Sunderland v. Commissioner, 151 F.2d 675 (CCA 3, 1945)
Hall v. Commissioner, 150 F.2d 304 (CCA 10, 1945)
Arnstrong v. Commissioner, 143 F.2d 700 (CCA 10, 1944)
Commissioner v. Katz, 139 F.2d 107 (CCA 7, 1943)
United States v. Pierce, 137 F.2d 428 (CCA 8, 1943)
Phipps v. Commissioner, 137 F.2d 141 (CCA 2, 1943)
Helvering v. Bok, 132 F.2d 365 (CCA 3, 1943)
Hogle v. Commissioner, 132 F.2d 66 (CCA 10, 1942)
Commissioner v. Bateman, 127 F.2d 266 (CCA 1, 1942)

Suhr v. Commissioner, 126 F.2d 283 (CCA 6, 1942)
Commissioner v. Armour, 125 F.2d 467 (CCA 7, 1942)
Commissioner v. Betts, 123 F.2d 534 (CCA 7, 1941)
Commissioner v. Jonas, 122 F.2d 169 (CCA 2, 1941)
Jones v. Morris, 122 F.2d 6 (CCA 10, 1941)
Commissioner v. Chamberlain, 121 F.2d 765 (CCA 2, 1941)
Commissioner v. Branch, 114 F.2d 985 (CCA 1, 1940)
Helvering v. Achelis, 112 F.2d 929 (CCA 2, 1940)