J. ADALBERTO ROIG, ANTONIO ROIG, JR. y AGUSTÍN CABRER, demandantes y recurrentes *v.* SECRETARIO DE HACIENDA DE PUERTO RICO, demandado y recurrido.

*Números:* 12071, 12072 y 12073   *Resuelto:* 18 de diciembre de 1961

---

[5] El resultado hubiese sido distinto si la denuncia ante el Tribunal de Distrito se hubiese presentado por un fiscal.

*James R. Beverly, R. Castro Fernández* y *Francisco Castro Amy,* abogados de los recurrentes; *J. B. Fernández Badillo, Secretario de Justicia* y *J. C. Santiago Matos, Procurados Auxiliar,* abogados del recurrido.

EL JUEZ ASOCIADO SEÑOR BLANCO LUGO emitió la opinión del Tribunal.

Por escritura número 105 de 17 de agosto de 1933 otorgada ante el notario don Francisco González Fagundo se constituyó una sociedad civil agrícola en comandita bajo la razón Antonio Roig Sucesores, Sociedad en Comandita. Esta sociedad familiar se componía de doña Eulogia Guzmán viuda de Roig, como socia comanditaria, y de sus dos hijos Antonio Agripino y Jorge Adalberto Roig Guzmán, como socios gestores.

En diciembre de 1942, don Jorge Adalberto Roig donó a sus tres hijos menores Jorge Adalberto, Antonio y Aileen Mary Roig Ferré una participación de $200,000 en el capital que le pertenecía en la mencionada sociedad, incluyéndose también en la donación la parte proporcional correspondiente a esta suma en los beneficios acumulados pendientes de distribución y en las reservas de capital. Igualmente, doña Eulogia Guzmán viuda de Roig donó a estos donatarios una participación de $50,000, a cada uno, del capital que ella poseía en la razón social.

En mayo de 1946, don Jorge Adalberto Roig hizo una donación adicional de $200,000 a cada uno de sus hijos mencionados. Para la misma fecha don Antonio Agripino Roig donó a sus nietos Raúl A. Roig—hijo de su hijo Antonio Roig, Jr.—y Angeles Cabrer Roig—hija de su hija Gladys Roig— una participación de $100,000 a cada uno del capital que le pertenecía en dicha sociedad.

Los traspasos de capital social a los menores fueron acreditados en los libros de la sociedad y al efecto se abrió una cuenta capital para cada uno de ellos. Con excepción del pago anual de la contribución sobre ingresos y del Impuesto de la Victoria, y en los casos de Raúl A. Roig y Angeles Cabrer en que se hizo una insignificante inversión para la adquisición de acciones en la corporación Roig Commercial Bank, no aparece que se debitara cantidad alguna a estas cuentas personales. Anualmente se han hecho los créditos correspondientes por beneficios, así como algunos traspasos de las reservas de capital.

Tanto don Jorge Adalberto Roig como don Antonio Roig, Jr. y Agustín Cabrer, padres con patria potestad sobre los donatarios menores de edad, renunciaron el usufructo legal que la ley les confiere en relación con los bienes de sus hijos no emancipados.

El Secretario de Hacienda incluyó en las declaraciones de ingresos de los señores Jorge Adalberto Roig, Antonio Roig,

Jr. y Agustín Cabrer los beneficios anuales acreditados a sus respectivos hijos por su condición de socios de Antonio Roig Sucesores, Sociedad en Comandita. En la querella presentada ante el extinto Tribunal de Contribuciones se impugnó la corrección de esta actuación del Secretario. Al comenzar la vista celebrada, el abogado de los contribuyentes indicó que:

"Otra cuestión envuelta es la renuncia del usufructo, si un padre tiene derecho para renunciar al usufructo sobre los bienes de sus hijos menores. En cuanto a esta cuestión hemos convenido estipular lo siguiente: Que los padres y abuelos donaron a sus hijos y nietos determinado interés en el capital social de Antonio Roig Sucesores y los padres hicieron renuncia expresa del derecho de usufructo, dejando por tanto como única cuestión envuelta el derecho o la validez de la renuncia del usufructo hecha por los padres a favor de sus hijos. Que de hecho los padres renunciaron al usufructo y el Tesorero cuestiona solamente el derecho del padre a hacer tal renuncia. Para completar este punto sobre la renuncia del usufructo hemos traído copia certificada de la cuenta de todos los menores envueltos, donde aparece que los beneficios distribuidos correspondiente a los menores le fueron acreditados a la cuenta de cada uno, y ahí están con la mera excepción que aparece de la cuenta de  donde se ha retirado para pagar 'income tax' y otros gastos que aparecen de la misma prueba.

"Demandado: Correcto, esa es la estipulación."

De lo transcrito precedentemente se deduce que la determinación de la procedencia de la inclusión de los ingresos de los hijos menores en las declaraciones de sus padres depende del carácter renunciable o irrenunciable del usufructo legal de los padres.[1]    Contrario a lo acontecido en *Serrallés Galiano* v. *Secretario de Hacienda*, 84 D.P.R. 11 (1961), no se discute la legitimidad de los motivos de las donaciones ni se les atribuye el propósito deliberado de distribuir el ingreso entre

---

[1] Así lo entendió el juez sentenciador que indicó que "(e)n este caso . . . se nos somete la cuestión casi escuetamente como una de derecho, o sea, si en Puerto Rico es o no legalmente renunciable el usufructo sobre los bienes de los hijos que el Artículo 155 del Código Civil concede a los padres." (T. A., pág. 17.)

los miembros de una unidad económica familiar para atemperar el rigor de los tipos contributivos progresivos de la contribución adicional.

*Renunciabilidad del Usufructo Legal de los Padres*

■ En el capítulo referente a los efectos de la patria potestad respecto a los bienes de los hijos, el Código Civil de Puerto Rico regula lo relativo a la administración de los bienes y al derecho de usufructo que corresponde a los padres en determinados casos. En términos generales puede afirmarse que el ejercicio de la patria potestad confiere la administración de los bienes a los padres—artículo 154, 31 L.P.R.A. sec. 611— salvo los casos en que éstos se le hubieren donado al hijo para los gastos de su educación e instrucción y el donante hubiere dispuesto otra cosa—artículo 157, 31 L.P.R.A. sec. 614— o cuando, con el consentimiento de los padres, el hijo viviere independientemente—artículo 155, 31 L.P.R.A. sec. 612. *Blanco* v. *Tribunal de Contribuciones*, 72 D.P.R. 855, 864–5 (1951).

■ De conformidad con las disposiciones de los artículos 155 a 157, 31 L.P.R.A. secs. 612 a 614, corresponde a los padres el usufructo de los bienes que el hijo no emancipado adquiera *a*) con su trabajo o industria (peculio cuasi castrense) ; *b*) por cualquier título lucrativo (peculio adventicio), excepto cuando se tratare de bienes o rentas donadas o legadas para los gastos de educación e instrucción del hijo; y, *c*) con el caudal de cualesquiera de los padres (peculio profecticio), en cuyo caso también les pertenece el dominio de los bienes así adquiridos. Ahora bien, cuando los padres hayan sido excluidos de una herencia por indignidad y sus hijos le sucedieren en su derecho a legítima, el padre excluido no tendrá ni el usufructo ni la administración de los bienes que en este supuesto hereden sus hijos, a pesar de tratarse de una adquisición por éstos a título lucrativo, artículo 690, 31 L.P.R.A.

sec. 2266.([2])   Es conveniente aclarar que en cuanto se refiere al usufructo de los bienes de los hijos reconocidos o adoptivos, el artículo 161, 31 L.P.R.A. sec. 618, preceptúa que los padres no lo adquieren y que tampoco tendrán la administración de los mismos, a menos que aseguren con fianza sus resultas.   Esta disposición, que procede literalmente del artículo 166 del Código Civil Español, ha sido dejada sin efecto en lo que respecta a los hijos adoptivos por legislación posterior mediante la Ley Núm. 86 de 15 de junio de 1953 (Leyes, pág. 305) que enmendó el artículo 132, 31 L.P.R.A. sec. 533, a los fines de establecer que el hijo adoptivo será considerado *"para todos los efectos legales"* como un hijo legítimo del adoptante, y éste como el padre legítimo de aquél. ([3]) Como atinadamente apunta Valverde ([4]) el fin de este artículo 166, correspondiente al 161 nuestro, es evitar que el lucro sea el móvil del reconocimiento y la adopción.   A este respecto el legislador puertorriqueño ha provisto la intervención de una agencia del Estado—División de Bienestar Público—que lleva a cabo una investigación de los hechos y circunstancias que rodean la petición de adopción y rinde el informe correspondiente al tribunal, artículo 613 del Código

---

([2])El Código Civil Español contiene idéntica disposición—artículo 857—para el caso de desheredación: "Los hijos del desheredado ocuparán su lugar y conservarán los derechos de herederos forzosos respecto a la legítima; pero el padre desheredado no tendrá el usufructo ni la administración de los bienes de la misma . . ." Inexplicablemente, en nuestro código se suprimió este artículo a continuación del 781, 31 L.P.R.A. sec. 2459, y a ello alude Muñoz Morales, Anotaciones al Código Civil de Puerto Rico, Libro III, pág. 250 (1939) como una indebida mutilación en una de sus más importantes disposiciones, y adelanta que "ese error no queda subsanado con la subsistencia del artículo 689. . . ni con la del artículo 892. . ."

([3])La Ley 17 de 20 de agosto de 1952 (Leyes, pág. 201) determina que todos los hijos tienen respecto a sus padres y a los bienes relictos por éstos, los mismos derechos que corresponden a los hijos legítimos. Como se verá, existe una diferencia en la redacción con la Ley 86 de 1953. supra, referente a los hijos adoptivos. Si en esta situación de los hijos reconocidos se impone la misma solución que en cuanto a los adoptivos *quaere*.

([4])Tratado de Derecho Civil Español, Cuarta Ed. (1938), tomo IV, pág. 505.

de Enjuiciamiento Civil, 32 L.P.R.A. sec. 2692, según enmendado por la Ley Núm. 85 de 15 de junio de 1953 (Leyes, pág. 299), y que, en cierta medida tiende a evitar el peligro antes apuntado.

Los artículos 155 a 157 ya citados fueron copiados literalmente de sus correspondientes 160 a 162 del Código Civil Español. Entre las naciones del tronco ibérico, Panamá[5] y Cuba[6] tienen idénticas disposiciones. Uruguay[7] Colombia,[8] Méjico,[9] Perú,[10] Bolivia,[11] El Salvador,[12] Argentina,[13] Venezuela,[14] y Chile[15] adoptaron también disposiciones similares, pero atemperan el rigor de la legislación española y establecen el peculio "profesional o industrial", o sea el que se refiere a los bienes que adquiera el hijo por su industria o trabajo, y le confieren tanto el dominio como el usufructo a los hijos. En Uruguay y Argentina se exceptúa del derecho de usufructo de los padres a los bienes que los hijos adquieran por "caso fortuito", tales como por juego, apuesta, invención o hallazgo. Los bienes legados

---

[5] Artículo 193 a 195 del Código Civil de Panamá de 1926, ed. Imprenta Nacional, pág. 56.

[6] Artículo 160 a 162 del Código Civil de Cuba, editado por Eduardo Rafael Núñez, 1940, pág. 124 a 126.

[7] Artículo 266 del Código Civil de Uruguay, edición de la Facultad de Derecho y Ciencias Sociales de la Universidad de Montevideo, 1949, tomo 1º, pág. 363.

[8] Artículo 291 del Código Civil de Colombia, Editorial Temis, 1955, pág. 135.

[9] Artículo 429 del Código Civil de Méjico, Ediciones Andrade, 1952, pág. 148.

[10] Artículo 401 del Código Civil de Perú, Librería Mejía Baca, 1955, pág. 129.

[11] Artículo 193 del Código Civil de Bolivia, Ed. Instituto de Cultura Hispánica, 1959, pág. 54.

[12] Artículo 255 del Código Civil de El Salvador, Ed. Instituto de Cultura Hispánica, 1959, pág. 77.

[13] Artículo 287 del Código Civil de Argentina, Ed. La Facultad, 1933, pág. 77.

[14] Artículo 273 del Código Civil de Venezuela, ed. Imprenta Nacional, pág. 75.

[15] Artículo 243 del Código Civil de Chile, ed. Instituto de Cultura Hispánica, 1961, pág. 96.

o donados a los hijos menores para un fin específico—aunque no sea para los gastos de educación e instrucción—se excluyen en Perú (art. 401), Argentina (art. 289) y Méjico (art. 430), del usufructo concedido a los padres sobre los bienes de sus hijos.

En California, el padre solamente tiene derecho a los bienes que el hijo adquiera con su industria o trabajo (artículo 197 del Código Civil, Deering's *Civil Code of California*, pág. 77), pero éste conserva el dominio absoluto de otros bienes que adquiera por cualquier título, 37 Cal. Jur.2d, *Parent and Child*, secs. 45 y 58, págs. 199 y 224. Luisiana, siguiendo el precedente de la legislación napoleónica, concede el usufructo a los padres hasta la mayoridad de los hijos, y específicamente les impone, como una obligación resultante de este disfrute, la de alimentar, sostener y educar los hijos de acuerdo con sus circunstancias. Al igual que en la mayoría de los países hispanoamericanos, el usufructo no cubre los bienes adquiridos por el hijo mediante su industria o trabajo ni los que le hubieren sido donados o legados bajo la condición expresa de que los padres no tendrán su disfrute. Artículos 223 a 226, West's Louisiana *Civil Code*, vol. 2, págs. 173–183; Dowling, *Parents Usufruct of Child's Estate During Marriage*, Tul. L. Rev., vol. XX (1945), pág. 163.

Existe una marcada división entre los comentaristas de Derecho Civil sobre la irrenunciabilidad del usufructo que sobre los bienes de los hijos confiere la ley a los padres. Quienes sustentan que no puede ser renunciado aducen como fundamento a) que este usufructo es inherente a la patria potestad y a sus funciones de reconocido interés público; b) que es una consecuencia directa del ejercicio del deber de asistencia y protección que tienen los padres para con los hijos, y por tanto, representa una compensación por los beneficios que se le proporcionan al hijo para su subsistencia y desarrollo; c) que no ha sido establecido en beneficio exclusivo del padre, sino de la familia por él regida para ayu-

darle a sobrellevar las cargas consustanciales con el ejercicio de la patria potestad; *d)* que este usufructo no tiene estrictamente el concepto de un derecho pecuniario; *e)* que como es un derecho inalienable, consecuencia inmediata es que no puede ser renunciado, por ser la renuncia una forma de enajenación; *f)* que, como la administración no es renunciable, tampoco debe serlo el usufructo, en razón del vínculo estrecho que los une; *g)* que, aunque el código no lo dispone así expresamente, legislación posterior—artículo 108 de la Ley Hipotecaria que dispone que este usufructo no es hipotecable—así lo confirma; *h)* que así ha sido reconocido por Sentencias del Tribunal Supremo de España, y se citan las de 22 de octubre de 1891 (Jurisp. Civil, tomo 70, pág. 248) 7 de julio de 1892 (Jurisp. Civil, tomo 72, pág. 25), y con especial énfasis, la de 27 de septiembre de 1893 (Jurisp. Civil, tomo 74, pág. 130). Castán Tobeñas, *Derecho Civil Español, Común y Foral* (ed. 1958), tomo V. Vol. 2º., págs. 162–163; Manresa, *Comentarios al Código Civil Español* (ed. 1957), tomo II, págs. 49–57; Puig Peña, *Tratado de Derecho Civil Español* (ed 1951), Tomo II, vol. 2º., págs. 175–177; Valverde, *Tratado de Derecho Civil Español* (ed. 1938), tomo IV, págs. 501–505; Castán Vázquez, *La Patria Potestad* (ed. 1960), págs. 297–299; Bonet Ramón, *Compendio de Derecho Civil* (ed. 1960), tomo IV, págs. 627–629; Borrell y Soler, *Derecho Civil Español* (ed. 1954), tomo IV, págs. 169–174; Santamaría, *Comentarios al Código Civil* (ed. 1938), tomo I, págs. 227–229; cf. Colín y Capitant, *Curso Elemental de Derecho Civil* (trad. de Demófilo de Buen, ed. 1942) tomo II, vol. I, pág. 80; Josserand, *Derecho Civil* (trad. de Santiago Cunchillas, ed. 1950), tomo I, vol. 2, págs. 281–285; Machado, *Comentarios al Código Civil* (de Cuba), pág. 109. Véanse, además, *La prohibición de enajenar bienes dejados en nuda propiedad a los hijos menores*, Revista Crítica de Derecho Inmobiliario (1953), tomo 26, págs. 872–873; *Usufructo de la Patria Potestad*, Revista General de Legislación y Jurisprudencia, (1927), tomo 150, págs. 133–137. Pare-

cido criterio informa la legislación uruguaya. Allí se ha dicho que el fundamento de este derecho de usufructo es la habilitación del padre para el cumplimiento de sus obligaciones o como compensación de lo que inviertan de sus bienes propios en atender dichas obligaciones. (Véase, sumario al calce del artículo 266 del Código Civil Anotado de Uruguay, *supra*.)

La piedra angular de los comentarios que propugnan el carácter renunciable del usufructo paterno es que, a diferencia de la administración, no participa de la naturaleza de disposición de orden público, pues es conferido al padre "como compensación de los gastos y penalidades que la crianza y administración llevan consigo, como para evitar los peligros de la dación de cuentas, en que los prestigios del padre puedan salir mal parados". De Diego, *Instituciones de Derecho Civil Español* (ed. 1959), tomo II, pág. 671. Oyuelos, en su *Digesto*, tomo I, pág. 267, traza un paralelo entre el derecho de usufructo del padre y el tutor a frutos por pensión, queriendo significar que este uso y disfrute arranca del relevo de rendición de cuentas. Véase, Gregorio Ortega, *La Hipoteca del usufructo y su extinción*, Revista de Derecho Privado, tomo 30, págs. 827–829. Hay quienes sustentan que en realidad el patrimonio paterno sólo se acrecenta con los frutos del peculio del hijo en cuanto excedan de los gastos de éste,(16) y que en este sentido, se asimila a cualquier otro derecho de usufructo convencional, y, por tanto, es suceptible de ser renunciado. Planiol y Ripert, *Tratado Práctico de Derecho Civil Francés* (ed. 1927), tomo I, págs. 369–370.

---

(16) *Blanco* v. *Tribunal de Contribuciones*, 72 D.P.R. 855, 864 (1951) parece hacerse eco de esta posición cuando al referirse al carácter especial del usufructo de los padres, dice "Nada encontramos en nuestro Código Civil que disponga que terminada la condición de usufructuaria de la peticionaria tenga ésta la obligación de rendir cuentas a sus hijas sobre el remanente que pueda haber de los frutos percibidos por ella después de haber sufragado los gastos correspondientes a la alimentación, cuido y educación de sus hijas . . ."

Es conveniente añadir que algunas legislaciones permiten *expresamente* la renuncia del usufructo: Alemana—artículo 1662, véase, Kipp y Wolff, *Tratado de Derecho Civil* (ed. 1952), tomo IV, vol. 2, pág. 94; Méjico—artículo 431, que exige que la renuncia se haga constar por escrito o de cualquier otro modo indubitable; Perú—artículo 405, que expresamente prohibe la "transmisión" del derecho, pero admite su renuncia en cualquier momento.

Al resolver sobre la procedencia de una acción en daños y perjuicios incoada por un hijo por actos negligentes de su padre, este Tribunal, en *Guerra* v. *Ortiz*, 71 D.P.R. 613, 619, (1950), confirmado en 187 F.2d 496 (1951), discutió como uno de los posibles factores adversos a tal pretensión el carácter irrenunciable del derecho de usufructo legal reconocido a los padres. Al efecto se dijo:

"Existe otro factor de gran importancia que debemos considerar al resolver la cuestión planteada y es que, bajo el artículo 155 del Código Civil, supra, los bienes que el hijo no emancipado adquiera, si bien le pertenecen en propiedad, 'pertenecen . . . en usufructo a los padres que le tengan en su potestad y compañía . . .', teniendo ellos, además, de acuerdo con el artículo 154, supra, la administración de dichos bienes. Surgiría aquí, por tanto, la situación anormal—por no conceptuarla de inmoral—de que el padre vendría a ser el administrador y usufructuario de lo que, por su actuación puramente negligente, obtuviera el hijo. Podría argüirse que esos derechos de administración y usufructo legal concedidos a los padres podrían ser renunciados por éstos. Los comentaristas del Código Civil Español sostienen lo contrario."

No obstante, seis años después, dejamos la cuestión abierta a ulterior consideración en *Alvarez* v. *Secretario de Hacienda*, 80 D.P.R. 16, 27 (1957) (en reconsideración), cuando dijimos que "Finalmente indicamos que en este caso es innecesario considerar la cuestión de si un padre con patria potestad puede jamás renunciar o enajenar el usufructo de

bienes pertenecientes a sus hijos menores de edad".(17)
*Hernández* v. *Tribunal de Contribuciones*, 73 D.P.R. 710
(1952) no arroja luz alguna sobre el problema planteado, ya
que, aunque trata de la tributación de rentas producidas por
bienes de hijos menores cuyo usufructo pertenecía a la madre,
no nos enfrentamos a un caso en que mediara una renuncia
del usufructo de los padres.

Después de analizar cuidadosamente el problema
planteado, creemos que constituye la mejor solución aquella
que sostiene que el padre no puede renunciar la administra-
ción, pero sí el usufructo que le concede la ley sobre los bienes
de sus hijos, cuando dicha renuncia se hace a favor del propio
hijo y no entraña una enajenación a favor de un tercero.
Cf. *Suárez* v. *Registrador*, 35 D.P.R. 509 (1926). Aten-
didos los fundamentos que se han aducido, parece claro que
tal renuncia no sólo no perjudica al hijo menor, sino que le
beneficia, y que por tanto no se vulnera el principio de que
el usufructo se constituye para protección del menor. El
efecto inmediato de la renuncia es privar al padre de la libre
disposición—sin rendición de cuentas—de los frutos, pro-
ductos y utilidades que puedan producir los bienes, que en
esta forma pasarían a acrecentar el peculio—etimológica-
mente, pequeño patrimonio—del hijo. No puede argüirse
que se desatendería la obligación de suministrar alimentos al
hijo porque en cuanto se refiere al padre, tal obligación se la
impone la ley independientemente de que el hijo posea bienes,
y en cuanto se refiere al hijo, porque siempre tendría a su
disposición para satisfacer sus necesidades la acumulación
de los frutos producidos y aún el capital mismo, si ello fuere

---

(17) En la opinión original emitida en el citado caso de *Alvarez*, 78
D.P.R. 412 (1955), se había indicado que "ni la administración de los bie-
nes de tal hijo, *ni la enajenación del usufructo* constituido sobre los mis-
mos resultan renunciables o enajenables como cuestión de Derecho Pú-
blico, no siendo por lo tanto posible, mediante la creación de un fideico-
miso, relevar a un padre de tales obligaciones paterno-filiales". En igual
sentido se manifiesta la opinión concurrente en 80 D.P.R. 52 (1957).

necesario. Por otro lado, resultaría una inexplicable anomalía que se insistiera en la irrenunciabilidad del derecho de usufructo por ser éste inherente al ejercicio de la patria potestad cuando el propio código reconoce situaciones en que se puede privar al padre, no ya del usufructo, sino de la administración misma, por sus propios actos (art. 166 del Código Civil), o por la sola voluntad de un tercero que puede encomendar tal encargo a un extraño (artículo 157). Valga la pena aclarar que no puede persuadirnos otra razón que se aduce al efecto de que este usufructo representa una compensación que se le reconoce al padre en atención a las cargas resultantes del ejercicio de la patria potestad, pues ello equivaldría a desnaturalizar esta institución que es base de todo el orden familiar atribuyéndole características de derecho pecuniario, cuando por ser las obligaciones engendradas de carácter enminentemente moral no pueden ni deben ser compensadas por dinero. Precisamente sostenemos que la administración es irrenunciable porque nos fundamos en el principio indiscutible de que nadie vela con más celo y discreción por los intereses de la prole que el propio padre que la engendró.

No es convincente el aserto de que si el usufructo no puede enajenarse tampoco debe poder ser renunciable, ya que el resultado práctico de la enajenación y gravamen de los bienes de los hijos menores, que no está vedada a los padres sino limitada mediante la intervención del tribunal a los fines de asegurarse de la necesidad, utilidad y conveniencia de la transacción propuesta, es la alienabilidad del derecho de disfrute del padre en los bienes enajenados o gravados.

Resulta claro, además, que la renuncia que admitimos no desvincula totalmente al padre de los bienes de los hijos, ya que para la disposición o utilización, tanto del capital como de lo que éste produzca, es preciso que intervenga a los fines de gestionar y obtener la correspondiente autorización judi-

cial, artículo 159, 31 L.P.R.A. sec. 616. Por supuesto que una de las consecuencias de la renuncia del usufructo legal por el padre que conserva la administración de los bienes de sus hijos menores es que vendrá obligado no sólo a la formación del correspondiente inventario (artículo 615 del Código Civil, 31 L.P.R.A. sec. 615) sino a rendir cuentas de su gestión. Ello es así porque cualquier remanente después de cubrir los gastos de administración pasa a formar parte del capital del hijo, que no podrá utilizarse mas que en la forma dispuesta en ley. Advertimos que cuando el padre que hace la donación utiliza los frutos y utilidades que producen los bienes donados para sufragar los gastos de alimentación y educación de los hijos donatarios, procede incluir estas cantidades entre sus ingresos, ya que han servido al propósito de cumplir la obligación que la ley le impone al respecto. *Serrallés Galiano* v. *Secretario de Hacienda*, 84 D.P.R. 11 (1961) ; cf. *Alvarez* v. *Secretario de Hacienda*, 80 D.P.R. 16 (1957) ; *Helvering* v. *Stuart*, 317 U.S. 154 (1942) ; *Helvering* v. *Clifford*, 309 U .S. 331 (1940) .

Como estos casos se sometieron para decisión a base de la determinación sobre la renunciabilidad del usufructo de los padres sobre los bienes de los hijos, y en vista de la conclusión a que hemos llegado al efecto, *se revocarán las sentencias dictadas por el Tribunal Superior, Sala San Juan, en 9 de marzo de 1955.*

El Juez Asociado señor Belaval disintió. Los Jueces Asociados señores Santana Becerra y Serrano Geyls no intervinieron.