J. ADALBERTO ROIG, demandante y recurrente, *v.* SECRETARIO DE HACIENDA DE PUERTO RICO, demandado y recurrido.

*Número:* R-64-130 *Resuelto:* 26 de abril de 1965

---

*James R. Beverley, Rafael Castro Fernández* y *William Estrella,* abogados del recurrente; *J. B. Fernández Badillo, Procurador General, Irene Curbelo* y *Elpidio Arcaya, Procuradores Generales Auxiliares,* abogados del recurrido.

Sala integrada por el Juez Asociado Señor Belaval como Presidente de Sala y los Jueces Asociados Señores Hernández Matos y Santana Becerra.

EL JUEZ ASOCIADO SEÑOR SANTANA BECERRA emitió la opinión del Tribunal.

En este caso el contribuyente insistió en no hacer una deducción en su planilla de contribuciones sobre ingresos para el año 1955 en la cantidad de $89,912.10 por concepto de intereses, y el Secretario de Hacienda le exigió que hiciera tal deducción. Cosa rara en la tradicional posición de los contribuyentes y del Erario público. Por extraña que parezca la situación, se explica de la siguiente manera:

El Tribunal Superior, Sala de San Juan, le determinó deficiencias al contribuyente para los años 1941 al 1947 y como consecuencia de ello, y a fin de satisfacer la jurisdicción de este Tribunal Supremo, el 5 de mayo de 1955 el contribuyente envió al Secretario de Hacienda una comunicación así:

"Adjunto le incluyo cheque No. H-1920 expedido por Antonio Roig Sucrs. S. en C. a favor de usted, por la suma de $266,511.06 para pagar las deficiencias vencidas y adeudadas por Don J. Adalberto Roig, que de acuerdo con el cómputo radicado en el caso I-134 son las siguientes:" (Se detallan las deficiencias.)

De la cantidad de $266,511.06, $89,912.10 correspondían a intereses sobre las deficiencias.

En su planilla de contribuciones sobre ingresos para el año 1955 el contribuyente dedujo contra el ingreso bruto la referida cantidad de $89,912.10 de intereses, lo cual le dejó un ingreso neto de $26,151.62 y una contribución de $8,712.19 para dicho año. Posteriormente, en 24 de julio de 1958, el contribuyente sometió una planilla enmendada para el propio año 1955 en que según explicó, el único cambio consistía en eliminar la deducción de $89,912.10 de intereses. Como consecuencia de renunciar a esa deducción, la contribución para el año 1955 se le aumentaba de $8,712.19 a $72,416.18.

El porqué el contribuyente insistía en esa cuantiosa contribución mayor en 1955, se explica a través del mecanismo de ajuste y equilibrio contributivo que en sus Secs. 58 a 60A creó la Ley de Contribuciones sobre Ingresos de 1954—Ley Núm. 91 de 29 de junio de 1954—en torno a los años contributivos de 1954 y 1955. El funcionamiento de ese ajuste y relación contributiva entre esos dos años, para alivio de ciertos contribuyentes que se acogieran a la tributación mediante planilla estimada a partir del año 1955, así como el historial legislativo y las razones económicas que imperaron, lo explicamos recientemente, hablando por el Tribunal, en el caso de *Quiñones Sambolín* v. *Srio. de Hacienda,* 91 D.P.R. 77 (1964), en que por primera vez se nos presentó

la oportunidad de considerar dichas disposiciones de la Ley de 1954. No es necesario que repitamos ahora lo allí expuesto, a lo cual nos remitimos. Basta recordar que para todo contribuyente que se acogiera a la tributación en virtud de planilla estimada a partir del año 1955, la Ley condonó, como una medida de alivio, su contribución del año 1954 hasta una cantidad que no excediera de la contribución para el año contributivo 1955. En cuanto al exceso no condonado, se concedió, también como medida de alivio, un período más extenso de 18 meses a partir del año contributivo de 1954 para el pago del referido exceso sin intereses, penalidades u otras adiciones.

Para el año 1954 el contribuyente venía obligado a pagar una contribución de $98,204.33. Contra esa cantidad se rebajó la contribución según la planilla original de 1955 en la suma de $8,712.19, quedando una diferencia de $89,492.14 que con los correspondientes intereses en la suma de $49,332.55 montó a una contribución total de $138,824.69.

Para el año contributivo de 1955 el contribuyente había satisfecho a través de una planilla estimada $92,539.70. Rebajada la contribución de ese año de $8,712.19 dejó una diferencia a favor del contribuyente de $88,827.51 que con sus intereses ascendió a $91,958.78. Esta cantidad se concedió como un crédito al contribuyente para su año 1954.

Ya dijimos que para el año 1954 había una contribución de $98,204.33. Según la planilla original y a tenor de la Sec. 60A(b) de la Ley, contra dicha contribución se compensaba la de $8,712.19 de 1955, quedando para el año 1954 una contribución en exceso de la de 1955 no condonada de $89,492.14. Según la planilla enmendada eliminando aquella partida de intereses, la contribución de 1954 de $98,204.33 se compensaría con una de $72,416.18. Esto da por resultado que para el año 1954 quedaría una contribución a pagar y no compensada de sólo $25,788.15 en lugar de una de $89,492.14; que con sus intereses se acrecía a $138,824.69.

Lo anterior explica por qué el contribuyente enmendó su planilla en 1955 e insistía en no hacer la deducción de intereses y por qué el Secretario de Hacienda no estaba conforme con ello. Al acreditarse a la cantidad de $138,824.69, contribución de 1954, lo pagado en exceso en 1955—$91,958.28—se producía una deficencia de $46,865.91 en 1954, en lugar de otro crédito. Con ciertos ajustes, la deficiencia notificada en litigio fue de $33,406.61.

Hasta aquí la razón económica del contribuyente para cambiar de parecer en cuanto a la deducción de la mencionada suma de intereses pagados en 5 de mayo de 1955 aumentando así la contribución a condonarse en el año 1954 de $8,712.19 a $72,416.18. La razón en derecho que invoca el contribuyente para eliminar la partida de intereses de $89,912.10 de su planilla de 1955 es que la suma de $266,511.06 pagada por él en mayo 5 de ese año constituyó un depósito o fianza a fin de apelar el fallo del Tribunal Superior que sostuvo dicha contribución, al Tribunal Supremo. Y que no habiendo sido un pago, esos intereses no eran en ley deducibles.

■ La Sec. 272 (b) (2) (¹) dispone que cuando un contribuyente apelare de la sentencia del Tribunal Superior determinando una deficiencia, vendrá obligado a *pagar* la totalidad de la deficiencia así determinada dentro del término para apelar; y el incumplimiento de dicho pago, excepto según se permite luego, despojará al Tribunal Supremo de facultad para conocer de la apelación en los méritos. Igual exigencia de pago existía bajo el regimen anterior de la Ley de 1924. La Ley del 54, sin embargo, conforme a un reexamen total legislativo que se hizo en torno a los requisitos de afianzamiento y pago de la contribución para que un contribuyente tuviera a su alcance el remedio judicial, dispuso que si el contribuyente no pudiere cumplir con el requisito *del*

---

(¹) 13 L.P.R.A. sec. 3272, (ed. 1962), según enmendada por la Ley Núm. 27 de 23 de mayo de 1963.

*pago* o sólo pudiere pagar parte de la deficiencia, el Tribunal Superior puede ordenar que la apelación siga su curso hasta su disposición final en los méritos sin el pago total de la deficiencia. Si el Tribunal Superior determina que el contribuyente puede pagar la deficiencia, o parte de la misma, *o que debe prestar una fianza,* el contribuyente debe proceder a dicho pago total o parcial, o a prestar la fianza requerida, y el cumplimiento de estos requisitos, o cualquiera de ellos que fuere, perfecciona la apelación.

Históricamente, siempre se había exigido aquí la prestación de una fianza, pero no el pago, como requisito para invocar en casos de deficiencias la jurisdicción del poder judicial al nivel del Tribunal Superior. Tradicionalmente se había exigido siempre *el pago* para invocar la jurisdicción al nivel del Tribunal Supremo. Por la Ley de 1954 se estableció un mecanismo en virtud del cual un contribuyente podía quedar relevado de la prestación de fianza para acudir al Tribunal Superior y relevado del pago para acudir al Tribunal Supremo.

█ En el caso de autos, según los hechos en el récord, obviamente el contribuyente no hizo un depósito ni prestó una fianza al pagar en 5 de mayo de 1955 el importe de las deficiencias determinadas por el Tribunal Superior con sus intereses. Él realizó un pago. Olvida en su posición ante nos que nada hay en el récord que demuestre que el Tribunal Superior hizo las conclusiones de ley cuando es permisible una fianza en lugar del pago, conclusiones que llevan la determinación de hecho de si el contribuyente puede o no pagar la contribución.

Está, además, el hecho incuestionable que cuando este Tribunal revocó al Tribunal Superior [2] el Erario público devolvió al contribuyente la cantidad de $266,511.06 pagada para apelar y en adición le pagó la suma de $121,272.28 por

[2] *Roig* v. *Srio. de Hacienda,* 84 D.P.R. 147 (1961).

concepto de intereses sobre los $266,511.06. Si el contribuyente insiste en que él prestó una fianza o hizo un depósito en 5 de mayo de 1955 no obstante los términos de su carta al Secretario, consecuente con ese criterio debió haber rechazado la cantidad de $121,272.28 que le abonaron como intereses a base de un pago. No hay ofrecimiento alguno en el récord de la Sala sentenciadora ni en nuestro récord por parte del contribuyente, de devolver dicha cantidad de intereses al Erario como un acto de reconciliación consigo mismo en cuanto a las dos actitudes que asume.

*Se confirmará la sentencia que dictó la Sala de San Juan del Tribunal Superior en 3 de marzo de 1964 que declaró sin lugar la demanda del contribuyente.*