SANTIAGO RODRÍGUEZ MEJÍAS ET AL., demandantes y recurrentes, *v.* ESTADO LIBRE ASOCIADO DE PUERTO RICO ET AL., demandados y recurridos.

*Número:* RE-88-135 *Resuelto:* 2 de diciembre de 1988

*Víctor A. Vélez Cardona,* abogado del recurrente; *Norma Cotti Cruz, Subprocuradora General,* y *Miriam Álvarez Archilla, Procuradora General Auxiliar,* abogadas de El Pueblo.

EL JUEZ ASOCIADO SEÑOR NEGRÓN GARCÍA emitió la opinión del Tribunal.

I

El 11 de abril de 1984 el Tribunal Superior, Sala de Mayagüez, declaró con lugar la demanda presentada por Santiago Rodríguez Mejías —por sí y en representación de su hija menor de edad, Jasmín Erika Rodríguez— contra el Estado Libre Asociado por los daños sufridos como resultado de la muerte ocurrida a su esposa Madelyn Morales Montalvo, luego de dar a luz mediante cesárea a la niña Jasmín. Le concedió a Rodríguez Mejías $10,000 y a Jasmín las sumas de $25,000 por concepto de la causa de *acción heredada* y $125,000 por sus propios sufrimientos presentes y futuros. El Estado satisfizo, mediante consignación, dicha sentencia. El tribunal, una vez descontados los honorarios de abogado, ordenó que el balance a favor de Jasmín fuera depositado en una cuenta bancaria que devengara intereses hasta su mayoridad.

Con el tiempo, el 29 de diciembre de 1986, su padre solicitó el retiro de los intereses devengados en dicha cuenta ascendentes a $4,160.95. Después, el 15 de abril de 1987, volvió a solicitar la misma cantidad. Argumentó que esos intereses le pertenecían en concepto de usufructo como padre con patria potestad sobre Jasmín. La Procuradora de Relaciones de Familia se opuso.

Previa vista, el tribunal resolvió que los intereses generados de la suma recibida en compensación por los daños morales de la menor Jasmín eran de su exclusiva propiedad, y los devengados de *la causa de acción heredada* pertenecían al padre en usufructo de conformidad con el Art. 155 del Código Civil, 31 L.P.R.A. sec. 612. Para implantar su mandato, ordenó se separaran en dos (2) cuentas dichas sumas: una para depositar la compensación recibida por la causa de acción heredada y, la otra, lo recibido por sus propios daños y perjuicios. Dispuso, además, el pago a favor de Santiago Rodríguez Mejías por $2,519.26, suma representativa de los intereses devengados por la compensación recibida como resultado de la causa de *acción heredada*. Finalmente, requirió que Santiago Rodríguez Mejías acreditara *bajo juramento* que en la actualidad tiene bajo su custodia y compañía a Jasmín. No surge que haya cumplido con este requerimiento.

Inconforme, éste recurrió ante nos y alega que los intereses generados por la compensación de daños de su hija —ascendentes a $12,593.28— le pertenecen en calidad de usufructo legal.[1] Mediante trámite de mostrar causa, resolvemos.

## II

La patria potestad ha sido definida como "el conjunto de derechos y deberes que corresponde a los padres sobre la *persona* y el *patrimonio* de cada uno de sus hijos no emancipados, como medio de realizar la función natural que les incumbe de proteger y educar a la prole". (Bastardillas en el texto original suprimidas y énfasis suplido.) J.M. Castán Vázquez, *La Patria Potestad*, Madrid, Ed. Rev. Der. Pri-

---

[1] También alega que el foro de instancia erró al no conceder su parte del usufructo *viudal* de la compensación recibida por la menor en la causa de acción heredada. De los autos originales no surge que con anterioridad haya solicitado tal derecho ante dicho foro. Por tal razón, no habremos de discutir este aspecto.

vado, 1960, págs. 9–10. Como puede apreciarse de la reglamentación del Código Civil, el conjunto de deberes y facultades que la patria potestad le impone a los padres se proyecta en dos (2) aspectos: en las relaciones personales y en las patrimoniales. *Torres, Ex parte*, 118 D.P.R. 469 (1987); M. Alonso Pérez, *El patrimonio de los hijos sometidos a la patria potestad*, 98 Rev. Der. Priv. 7 (1973). Bajo esta institución examinamos, dentro del contexto de las relaciones patrimoniales, el derecho de los padres que ejercen la patria potestad a disfrutar los bienes de los hijos sometidos a ella.

En el antiguo Derecho romano el padre ejercía un poder absoluto sobre sus hijos. La prole se consideraba parte de su propiedad. En su consecuencia, todo lo que los hijos adquirían pertenecía al padre. G. Cabanellas, *Diccionario Enciclopédico del Derecho Usual*, 20ma ed. rev., Buenos Aires, Ed. Heliasta, 1986, T. VI, pág. 150; P. Bonfante, *Instituciones de Derecho Romano*, 3ra ed., Madrid, Ed. Reus, 1965, pág. 165. Con el transcurso del tiempo, el rigor de esa visión fue suavizándose y comenzó a permitirse la existencia de pequeños patrimonios susceptibles de tenencia por los hijos, con separación del patrimonio de los padres, llamados *peculios*.

Estos peculios se clasificaron según la procedencia de los bienes, llamándose *peculium profecticium* al constituido por los bienes que el hijo recibía de su padre para que los administrara; *peculium castrense* al constituido por los bienes adquiridos en la milicia o con ocasión de ella; *peculium quasi castrense* al que se formaba con los adquiridos mediante el ejercicio de profesiones liberales, y *peculium adventitium* al que se constituía con bienes adquiridos de la madre o, en general, de cualquier persona distinta del padre, o por industria o suerte. Sobre el peculio profecticio correspondía la administración al hijo, reteniendo la propiedad el padre. Sobre el adventicio, por el contrario, tenía la propiedad el hijo, siendo la administración y el usufructo del padre. El castrense y el cuasi castrense encarnaban el verdadero principio de la separación de patri-

monios, pues pertenecían en absoluto al hijo, que tenía respecto de ellos la consideración de *pater familias*. J. Castán Tobeñas, *Derecho Civil español, común y foral*, 8va ed., Madrid, Ed. Reus, 1966, T. V, Vol. 2, pág. 164.

En su peregrinaje hacia la Península Ibérica, España no adoptó la figura de los peculios hasta la promulgación del Fuero Real. En *Las Siete Partidas* quedaron plenamente consagrados. Partida 4ta, Tít. XVII, Leyes 5ta, 6ta y 7ma. Sin embargo, más adelante, mediante la Ley de Matrimonio Civil de 1870, el sistema de peculios fue eliminado y se concedió entonces a los padres el usufructo de ciertos bienes filiales. Esta legislación sirvió de fundamento a la reglamentación posterior del Código Civil español en materia de usufructo de los padres, subsiguientemente exportada a Puerto Rico. Castán Vázquez, *op. cit.*, págs. 257–260; Alonso Pérez, *supra*; Castán Tobeñas, *op. cit.* Aunque el Código Civil eliminó el sistema de peculios, al reglamentar el usufructo de acuerdo con el origen de los bienes de los hijos creó unas distinciones similares que representan un residuo de la época romana. Esta situación, unida al hecho de que generalmente se entendía que el usufructo legal estaba fundamentado en una compensación de frutos por alimentos, ha llevado a muchas jurisdicciones a eliminarlo. Véanse: *Roig v. Srio. de Hacienda*, 84 D.P.R. 147, 153–154 (1961); L. Díez-Picazo y A. Gullón, *Sistema de Derecho Civil*, 3ra ed., Madrid, Ed. Tecnos, 1983, Vol. IV, pág. 369.

En el caso particular de España, la abarcadora reforma de 1981 lo suprimió. Hoy los frutos y rentas pertenecen siempre a los hijos. Aun así, la misma legislación concede facultad a los padres —que estén en el ejercicio de su patria potestad— para destinar los frutos y rentas de los menores que vivan con ellos en la parte correspondiente al levantamiento de las cargas familiares, sin estar obligados a rendir cuentas. Tienen derecho a que se les entreguen, en la medida

adecuada, los frutos de los bienes que ellos no administren.[2] Aunque en la práctica es argumentable si verdaderamente la supresión del usufructo es o no una modificación sustancial —pues el padre retiene la facultad para destinar unilateralmente los frutos al sostenimiento de la familia— ciertamente la ley establece un mejor balance al exigir que la aportación sea equitativa. Castán Vázquez, *op. cit.*, pág. 226; Díez-Picazo y Gullón, *op. cit.*

## III

Aclarado el origen y la trayectoria histórica de este *usufructo*, concentrémonos en los límites que tienen los padres en el ejercicio de la patria potestad. Después de todo, este tipo de usufructo presenta ciertas características peculiares que lo distinguen del usufructo tradicional. Primeramente, aunque se considera como un derecho que forma parte de los deberes de la patria potestad, no puede ser enajenado ni gravado. Castán Vázquez, *op. cit.*, págs. 274–275; Art. 159 del Código Civil, 31 L.P.R.A. sec. 616.[3] Como regla general, tampoco puede ser renunciado excepto a favor de los hijos. *Roig v. Srio. de Hacienda*, supra. Si bien el usu-

---

[2] El Art. 165 del Código Civil español señala como sigue:

"Pertenecen siempre al hijo no emancipado los frutos de sus bienes, así como todo lo que adquiera con su trabajo o industria.

"No obstante, los padres podrán destinar los del menor que viva con ambos o con uno solo de ellos, en la parte que le corresponda, al levantamiento de las cargas familiares y no estarán obligados a rendir cuentas de lo que hubiesen consumido en tales atenciones. . . .

"Con este fin se entregará a los padres, en la medida adecuada, los frutos de los bienes que ellos no administren. Se exceptúan los frutos de los bienes a que se refieren los números 1, 2 y 3 del artículo anterior y los de aqu[é]llos donados o dejados a los hijos especialmente para su educación o carrera, pero si los padres carecieren de medios podrán pedir al Juez que se les entregue la parte que en equidad proceda." *Código Civil*, 8va ed., Madrid, Ed. Civitas, 1984, págs. 102–103.

[3] El Art. 159 de la Ley Hipotecaria y del Registro de la Propiedad, 30 L.P.R.A. sec. 2555, dispone que no son hipotecables, entre otros, los usufructos legales, excepto el concedido al cónyuge viudo.

fructo es un derecho de los padres, no ha sido establecido para su provecho personal y exclusivo, sino en beneficio familiar con el fin principal de ayudarlos a sufragar las cargas inherentes a la patria potestad (criar, alimentar y educar a la prole). Por lo tanto, su gozo necesariamente indica el cumplimiento de los deberes de la patria potestad. Castán Vázquez, *op. cit.*, pág. 271.

Generalmente se entiende que el derecho de usufructo recae sobre *todos* los bienes de los hijos. Esa percepción es errónea. Nuestro Código Civil, al igual que anteriormente el español, no concede un usufructo universal, pues como los peculios, está limitado en atención al origen de los bienes de los hijos. M. Albaladejo, *Comentarios al Código Civil y compilaciones forales*, Madrid, Ed. Rev. Der. Privado, 1982, T. III, Vol. 2, pág. 177; Castán Tobeñas, *op. cit.*, págs. 165–166; Alonso Pérez, *supra*, págs. 31–32. Ello se explica, pues no todos los bienes que los hijos pueden poseer tienen un mismo origen y procedencia ni suponen idéntico título de adquisición. Caben ciertas distinciones entre un caso y otro, y de ahí también la diversidad de derechos que sobre dichos bienes concede la ley a los progenitores. Q.M. Scaevola, *Código Civil*, 5ta ed., Madrid, Ed. Reus, 1967, T. III, pág. 542.

 En nuestra jurisdicción, el usufructo legal de los padres se encuentra regulado por los Arts. 155–157 del Código Civil, 31 L.P.R.A. secs. 612–614, que disponen:

> Los bienes que el hijo no emancipado haya adquirido o adquiera *con su trabajo o industria, o por cualquier título lucrativo*, pertenecen al hijo en propiedad, y en usufructo a los padres *que le tengan en su potestad y compañía*; pero si el hijo, con consentimiento de sus padres, viviere independientemente de éstos, se le reputará para todos los efectos relativos a dichos bienes, como emancipado, y tendrá en ellos el dominio, el usufructo y la administración.
>
> . . . . . . . .
>
> Pertenece en propiedad y usufructo a ambos padres conjuntamente o a aquel de ellos que tenga bajo su potestad y custo-

dia al menor, lo que el hijo adquiera con caudal de cada uno de ellos. Pero si los padres o cualquiera de ellos le cediesen todo o parte de las ganancias, no se le imputarán en su herencia.

Corresponderán en propiedad y en usufructo al hijo no emancipado los bienes o rentas donados o legados para los gastos de su educación e instrucción; pero tendrán su administración ambos padres conjuntamente o aquel de ellos que tenga al menor bajo su potestad y custodia, si en la donación o en el legado no se hubiere dispuesto otra cosa, en cuyo caso se cumplirá estrictamente la voluntad de los donantes. (Énfasis suplido.)

La lectura integral de estos preceptos pone de manifiesto que los padres no siempre son titulares del usufructo de los bienes filiales. El Art. 155 del Código Civil, *supra*, sólo lo provee en relación con los bienes que adquiera el hijo como parte de su trabajo o industria, o por cualquier título lucrativo. Para ser acreedores es necesario que lo tenga en su potestad y compañía. Albaladejo, *op. cit.*, pág. 171. No existe el derecho al usufructo legal cuando el hijo vive independiente de los padres, en cuya situación se reputa emancipado.

Por su parte, el Art. 156 del Código Civil, *supra*, concede usufructo sobre *todos los bienes que el hijo adquiere con el caudal de sus padres*. Y, finalmente, el Art. 157 del Código Civil, *supra*, le niega a los progenitores el usufructo resultante de bienes donados a los hijos para la educación e instrucción.

IV

Al aplicar esta normativa al caso de autos, se hace evidente que, como resultado de la demanda iniciada por Rodríguez Mejías a favor de su hija Jasmín, ésta recibió una doble compensación. La primera, una indemnización concedida por concepto de la causa de acción *heredada* de su ma-

dre conforme *Vda. de Delgado v. Boston Ins. Co.*, 101 D.P.R. 598 (1973). Sobre este extremo, el tribunal de instancia correctamente concluyó que dichos bienes tenían un origen *lucrativo*, por lo que sus frutos —intereses— pertenecían al padre, siempre y cuando acreditara bajo juramento que en la actualidad tenía a Jasmín bajo su potestad y compañía. Esta exigencia responde, según antes visto, a que el Art. 155 del Código Civil, *supra*, condiciona el derecho de usufructo de los padres a que sus hijos, titulares de los bienes, se encuentren bajo su potestad y compañía. Esta exigencia es comprensible. De otro modo, carecería de sentido valorativo la concesión del usufructo, que no es en provecho personal del padre, sino familiar. Rodríguez Mejías no cuestiona este requisito ni tampoco ha acreditado su cumplimiento.

La otra compensación recibida por Jasmín corresponde a *sus* sufrimientos y angustias mentales como resultado de la muerte de su madre. Estos bienes *no* están previstos por el Art. 155 del Código Civil, *supra*, el cual se refiere a bienes adquiridos por "trabajo o industria, o por cualquier título lucrativo . . .". Por su origen gozan de otra naturaleza. Se trata de una compensación por lesiones físicas y sufrimientos y angustias mentales que tienen un carácter reparatorio de la integridad corporal y moral de la persona que ha padecido el daño. Es de carácter personalísimo. *Robles Ostolaza v. U.P.R.*, 96 D.P.R. 583 (1968).

A tono con esta característica y al imprimirle validez a la regla general de que los frutos pertenecen al propietario de la cosa o bien que los produce, resolvemos que los frutos —intereses— por las compensaciones concedidas a menores de edad en concepto de lesiones y sufrimientos y angustias mentales, deben acrecer a su propio patrimonio. Difícilmente estos bienes pueden clasificarse en la categoría de los adquiridos por industria o trabajo, o mediante título lucrativo. Art. 288 del Código Civil, 31 L.P.R.A. sec. 1141.

 Esta decisión no impide que de conformidad con las limitaciones dimanantes del Art. 159 del Código Civil, *supra*,(4) los padres de un menor, en el ejercicio válido de su patria potestad, puedan enajenar sus bienes muebles —como lo serían los fondos depositados a favor de éstos en pago de sus daños— siempre que concurran y se cumplan los requisitos sustantivos y procesales atinentes. *Ferré v. Registrador*, 109 D.P.R. 148, 155 (1979); Arts. 614–616 del Código de Enjuiciamiento Civil, 32 L.P.R.A. secs. 2721–2723.

Por los fundamentos expuestos, *se expedirá el auto y se dictará sentencia confirmatoria de la Resolución de 9 de marzo de 1988 del Tribunal Superior, Sala de Mayagüez.*

Los Jueces Asociados Señores Hernández Denton y Alonso Alonso concurren con el resultado sin opinión escrita.

---

(4) *"Sec. 616. Enajenación o gravamen de los bienes, prohibidos*

"El ejercicio de la patria potestad no autoriza a ninguno de los padres para enajenar o gravar bienes inmuebles de clase alguna, o muebles cuyo valor exceda de dos mil (2,000) dólares, pertenecientes al hijo, y que estén bajo la administración de ambos o de cualquiera de ellos, sin previa autorización de la Sala del Tribunal Superior en que los bienes radiquen, previa comprobación de la necesidad o utilidad de la enajenación o del gravamen, y de acuerdo con lo dispuesto en la ley referente a procedimientos legales especiales." 31 L.P.R.A. sec. 616.