Estado Libre Asociado de Puerto Rico
TRIBUNAL DE APELACIONES
PANEL VII

| | | |
|---|---|---|
| **TERESA LOPEZ ACEVEDO**<br><br>Apelada<br><br>v.<br><br>**JULIO JAVIER VIGOREAUX ELEUTECI**<br><br>Apelante | KLAN202400122 | APELACIÓN procedente del Tribunal de Primera Instancia, Sala de **Bayamón**<br><br>Caso Número: **BY2023RF01148**<br><br>Sobre: ***ALIMENTOS-MENORES DE EDAD Y OTROS*** |

Panel integrado por su presidenta, la Juez Domínguez Irizarry, la Juez Grana Martínez y el Juez Pérez Ocasio

Pérez Ocasio, Juez Ponente

**SENTENCIA**

En San Juan, Puerto Rico, a 31 de mayo de 2024.

Comparece ante nos, Julio Vigoreaux Eleuteci, en adelante, Vigoreaux o apelante, solicitando que revoquemos la *"Sentencia"* notificada por el Tribunal de Primera Instancia, Sala de Bayamón, en adelante, TPI-Bayamón, el día 6 de diciembre de 2023. Mediante el referido dictamen, el Foro apelado privó al apelante de la patria potestad de su hijo, JJVL.

Por los fundamentos que expondremos a continuación, *revocamos* la *"Sentencia"* apelada, y devolvemos al TPI-Bayamón la controversia de autos.

**I.**

Vigoreaux y Teresa López Acevedo, en adelante, López o apelada, sostuvieron una relación de convivencia, durante trece (13) años.[1] Durante este tiempo, ambos procrearon un hijo, el menor

---

[1] Apéndice del Recurso, pág. 71.

Número Identificador

SEN2024 _____

JJVL, quien nació el 24 de agosto de 2006.[2] Al momento de dilucidar esta controversia en el Foro apelativo, JJVL cuenta con diecisiete (17) años. Además, como parte del núcleo familiar entre estos, se encontraba VRL, quien es hija de López.

Posterior a la separación entre las partes, el 9 de diciembre de 2022, Vigoreaux alegadamente agredió sexualmente a VRL.[3] Por estos hechos, al apelante se le radicaron cargos criminales, al amparo del Artículo 130 del Código Penal de Puerto Rico, Ley Núm. 146 de 30 de julio de 2012, 33 LPRA sec. 5191.[4]

Sin embargo, luego de la celebración de la Vista Preliminar, el 29 de marzo de 2023, el TPI-Bayamón determinó que no había causa probable para acusar.[5] Inconformes, el Ministerio Público recurrió a una Vista Preliminar en Alzada, la cual fue desestimada, conforme a la Regla 64(n)(8) de Procedimiento Criminal, 34 LPRA Ap. II, R. 64.[6]

Por otro lado, y paralelo al procedimiento criminal antes descrito, el 8 de marzo de 2023, López solicitó una Orden de Protección a favor de su hijo, JJVL, y en contra de Vigoreaux.[7] Esta orden estaba vigente hasta el 19 de abril de 2023.[8] Luego de entrar en vigencia la orden de protección en cuestión, el 26 de marzo de 2023, el apelante le escribió un mensaje de texto a López, vía la aplicación de 'whatsapp', con relación a lo discutido en un 'chat' de padres.[9] Al día siguiente, la apelada denunció a Vigoreaux a las autoridades. Por este alegado incumplimiento con la Orden de Protección a favor de JJVL, se le radicó al apelante un cargo, por infracción al Artículo 70 de la ahora derogada Ley para la Seguridad,

---

[2] Apéndice del Recurso, pág. 74.
[3] *Id.* pág. 59.
[4] Caso D VP2022-2361.
[5] Apéndice del Recurso, pág. 19.
[6] *Id.* pág. 25.
[7] *Id.* pág. 47.
[8] *Id.* pág. 47.
[9] *Id.* pág. 48.

Bienestar y Protección de Menores, Ley Núm. 246 de 16 de diciembre 2011, 8 LPRA ant. sec. 1187.[10] Celebrada la vista preliminar, se determinó causa probable para acusar.

Presentada la acusación, la defensa del apelante presentó una *"Moción de Desestimación al Amparo de la Regla 64(p) de las de Procedimiento Criminal"*, a la cual se opuso el Ministerio Público.[11] En síntesis, Vigoreaux adujo que, durante la Vista Preliminar en su contra, el Ministerio Público no presentó prueba de los hechos que constituirían la violación a la Orden de Protección.[12] Añadió que tampoco se identificó al apelante.

En su *"Resolución"* del 15 de noviembre de 2023, el TPI-Bayamón declaró "Con Lugar" la desestimación solicitada por Vigoreaux. Indicó que, luego de escuchar la regrabación de la Vista Preliminar, y examinar los planteamientos de las partes, concluyó que no desfiló prueba en la Vista Preliminar para evidenciar los elementos del delito.[13] Además, puntualizó que del mensaje se desprende que la comunicación por mensajería estaba única y exclusivamente dirigida a López, y no tenía la intención de acercarse o comunicarse con JJVL.[14]

Mientras ocurrían estos incidentes de naturaleza penal, el 28 de junio de 2023, López presentó una acción civil que consistió en una *"Petición de Custodia, Privación de Patria Potestad y Alimentos"*, contra Vigoreaux.[15] En su demanda, López solicita que el TPI-Bayamón refiera la determinación de pensión alimentaria a favor de JJVL a un examinador, le otorgue la custodia y patria potestad de JJVL exclusivamente a su favor.

---

[10] Apéndice del Recurso, pág. 47.
[11] *Id.* pág. 47.
[12] *Id.*
[13] *Id.* pág. 50.
[14] *Id.* pág. 50.
[15] *Id.* pág. 71.

El 12 de septiembre de 2023, el apelante presentó su *"Contestación a Petición de Custodia, Privación de Patria Potestad y Alimentos"*, mediante la cual reconvino.[16] En su respuesta, y petitorio, Vigoreaux solicita la patria potestad compartida, y que el Foro Primario establezca un plan para establecer relaciones paterno filiales. Ese mismo día, el TPI-Bayamón señaló fecha para celebrar la vista de custodia y patria potestad, mediante videoconferencia.[17]

No empese a los resultados de los procedimientos criminales, y los asuntos en materia de Derecho de Familia en proceso, es importante señalar que, desde el 25 de septiembre de 2023, existe una Orden de Protección a favor de VRL, y en contra del apelante.[18] Por virtud de esta orden, el apelante no podía acercarse ni a VRL, ni a sus familiares, hogar o alrededores.[19] El 29 de septiembre de 2023, el Tribunal de Primera Instancia, Sala Municipal, de Bayamón, celebró una vista, a la que compareció el Departamento de la Familia.[20] El 31 de octubre de 2023, el Foro mencionado notificó una *"Resolución"*, en la que indicó que JJVL expresó no querer relacionarse con el apelante.[21] Por ello, señaló que Vigoreaux "no debe acercarse o comunicarse con el menor […] hasta tanto el menor esté listo y así lo exprese".[22]

Posteriormente, el 30 de noviembre de 2023, se celebró la vista de custodia y patria potestad. En la misma, las partes hicieron argumentaciones en derecho. Por su parte, el apelante se allanó a que la custodia la retuviera López, en su totalidad.[23] Sin embargo,

---

[16] Apéndice del Recurso, pág. 68.
[17] *Id*. pág. 65.
[18] *Id*. pág. 57.
[19] *Id*. pág. 60.
[20] *Id*. pág. 56.
[21] *Id*. pág. 55.
[22] *Id*. pág. 56.
[23] Transcripción de la Prueba Oral, Vista del 30 de noviembre de 2023, pág. 4.

se opuso a que se le privara de la patria potestad de JJVL, por no darse los elementos necesarios para ello.[24]

Por otro lado, la apelada sostuvo que sí se dan estos elementos, al amparo del Artículo 615 del Código Civil de 2020, Ley Núm. 55 de 1 de junio de 2020, 31 LPRA sec. 7322. Arguyó que una de las razones, bajo este artículo, para la privación de patria potestad *es daño a la salud mental o emocional del menor.*[25] Para ello, instó al Tribunal *que citara al menor JJVL y lo entrevistara.*[26] Además, la apelada ofreció otro inciso del artículo precitado, que justifica la remoción de la patria potestad cuando hay comportamiento criminal, argumentado que no es necesaria la convicción de la conducta constitutiva de delito para ello.[27] En esencia, razonó que con las resoluciones del Tribunal de Primera Instancia, Sala Municipal de Bayamón, el Foro apelado tenía suficiente prueba para removerle la patria potestad a Vigoreaux.[28]

Posteriormente, mediante *"Sentencia"* notificada el 6 de diciembre de 2023, el TPI-Bayamón declaró "Ha Lugar" la demanda de López, y privó al apelante de la patria potestad de JJVL.[29] El 19 de diciembre de 2023, Vigoreaux presentó una *"Moción de Reconsideración".*[30] El 20 de diciembre de 2023, el Foro apelado le concedió a la apelada un término de veinte (20) días para hacer alegación responsiva.[31] Luego de una prórroga,[32] el 12 de enero de 2024, López presentó su oposición a la reconsideración.[33]

---

[24] Transcripción de la Prueba Oral, Vista del 30 de noviembre de 2023, pág. 15.
[25] *Id.* pág. 21.
[26] *Id.* pág. 22.
[27] *Id.*
[28] *Id.* pág. 26.
[29] Apéndice del recurso, pág. 30.
[30] *Id.* pág. 12.
[31] *Id.* pág. 11.
[32] *Id.* pág. 9.
[33] *Id.* pág. 3.

Finalmente, mediante *"Resolución"* notificada el 12 de enero de 2024, el Foro primario declaró "No Ha Lugar" la reconsideración.[34]

Inconforme, Vigoreaux recurrió ante esta Curia, mediante *"Apelación"*, el 12 de febrero de 2024. En su recurso, el apelante hace los siguientes señalamientos de error:

> **PRIMER ERROR**: ERRÓ Y ABUSÓ DE SU DISCRECIÓN EL TRIBUNAL DE PRIMERA INSTANCIA AL PRIVAR AL APELANTE DE LA PATRIA POTESTAD SIN PRUEBA CLARA, ROBUSTA Y CONVINCENTE Y EN VIOLACIÓN AL DEBIDO PROCESO DE LEY.
>
> **SEGUNDO ERROR**: ERRÓ Y ABUSÓ DE SU DISCRECIÓN EL TRIBUNAL DE PRIMERA INSTANCIA AL IMPONER LA CARGA PROBATORIA AL APELANTE DE EVIDENCIAR QUE NO OCURRIERON UNOS HECHOS EN LOS CUALES PRIMERO HUBO UNA DETERMINACIÓN DE NO CAUSA EN VISTA PRELIMINAR Y LUEGO LA CAUSA FUE DESESTIMADA POR LA REGLA 64-N (8) EN VISTA PRELIMINAR EN ALZADA.

Así las cosas, mediante *"Resolución"* del 16 de febrero de 2024, este Tribunal ordenó a la parte apelante a presentar la transcripción de la prueba oral, en un término de treinta (30) días. Indicamos que, una vez presentada la prueba aludida, la parte apelada tendría un término de diez (10) días para presentar sus objeciones a la misma. Una vez este término quedare expirado, entonces la apelada tendría treinta (30) días para presentar ante nos su posición respecto al recurso. El 21 de febrero de 2024, el apelante presentó ante este Tribunal la transcripción oral de la vista por video conferencia celebrada el 30 de noviembre de 2023. En su *"Escrito en Cumplimiento de Orden"* del 4 de marzo de 2024, la apelada hizo unas observaciones y correcciones respecto a la transcripción.

Mediante *"Resolución"* del 12 de marzo de 2024, ordenamos a las partes del caso de marras a presentar ante este Tribunal la transcripción de la prueba oral, estipulada y con las correcciones sugeridas por la apelada. La *"Moción Informativa y Presentando*

---

[34] *Id.* pág. 2.

*Transcripción de Prueba Oral"* del 15 de marzo de 2024 del apelante, adoptó en su mayoría las sugerencias de la apelada, y en consecuencia, ordenamos que se cumpliera con la *"Resolución"* del 16 de febrero de 2024.

Finalmente, el 5 de abril de 2024, la apelada presentó ante esta Curia su *"Oposición a Recurso de Apelación".* Perfeccionado el recurso que nos ocupa, procedemos a exponer el derecho aplicable al caso de autos.

**II.**

**A. Debido Proceso de Ley**

Aunque luego profundizaremos en ello, adelantamos que el derecho a ejercer la patria potestad está vedado de protección constitucional federal y local. A estos fines, se ha interpretado que el concepto de "libertad" de la Decimocuarta enmienda de la Constitución federal incluye, entre otros, el derecho a tener un hogar, hijos y criar estos últimos. *Rentas Nieves v. Betancourt Figueroa,* 201 DPR 416, 428 (2018); *Rexach v. Ramírez,* 162 DPR 130, 146 (2004). Por estar la relación entre los progenitores y sus hijos constitucionalmente protegida, es importante apuntalar que los padres ostentan el derecho a decidir sobre asuntos fundamentales de sus hijos. Es decir, independientemente el poder del Estado, los actos en protección de este y en contravención con los derechos de los progenitores deben asegurar el cumplimiento cabal del debido proceso de ley. *Rentas Nieves v. Betancourt Figueroa,* supra, pág. 428. De esta manera, se vela por que el Estado no abuse de sus poderes. *Rexach v. Ramírez,* supra, pág. 145.

Para los fines de adjudicar la controversia ante nos, es importante enmarcar jurídicamente este concepto. El debido proceso de ley se puede definir como el derecho de toda persona a tener un proceso justo y con todas las debidas garantías que ofrece la ley, tanto en el ámbito judicial como en el administrativo. *Com.*

*Elect. PPD v. CEE et al.*, 205 DPR 724, 742 (2020); *Aut. Puertos v. HEO*, 186 DPR 417, 428 (2012), citando a *Marrero Caratini v. Rodríguez Rodríguez,* 138 DPR 215, 220 (1995). El mismo se bifurca en dos vertientes: sustantiva y procesal. *Com. Elect. PPD v. CEE et al.*, supra, pág. 743; *Aut. Puertos v. HEO*, supra, pág. 428; *Domínguez Castro et al. v. E.L.A. I,* 178 DPR 1, 35 (2010). La primera, la vertiente sustantiva, persigue proteger y salvaguardar los derechos fundamentales de la persona. *Com. Elect. PPD v. CEE et al.*, supra, pág. 743; *Aut. Puertos v. HEO,* supra, pág. 428.

Siendo así, cuando se ventila, en el contexto jurídico, un interés de libertad o propiedad, se activa la garantía que brinda el debido proceso de ley. *Com. Elect. PPD v. CEE et al.*, supra, pág. 743. "[M]ientras más fuerte sea el interés individual afectado y mayor respaldo social y constitucional tenga, el debido proceso de ley se torna más exigente". *Com. Elect. PPD v. CEE et al.*, supra, pág. 743.

Añadimos que el Tribunal Supremo ha expresado que "[l]os factores que deben analizarse para determinar si un procedimiento cumple con los requisitos constitucionales del debido proceso de ley son: (1) el interés privado que puede resultar afectado por la actuación oficial; (2) el riesgo de una determinación errónea debido al proceso utilizado y el valor probable de garantías adicionales o distintas, y (3) el interés gubernamental protegido en la acción sumaria, incluso la función de que se trata y los cargos fiscales y administrativos que conllevaría imponer otras garantías procesales". *Com. Elect. PPD v. CEE et al.*, supra, pág. 744.

Ahora bien, ningún derecho fundamental es absoluto. Por eso, los derechos de los padres pueden limitarse, en aras de proteger un interés apremiante del Estado, como lo es el bienestar de los menores. *Rexach v. Ramírez*, supra, pág. 147-148; *Chévere v. Levis*, 150 DPR 525, 544 (2000). En consecución, a los progenitores se les puede privar, suspender o restringir de la patria potestad. Esta

defensa busca evitar que el Estado abuse de sus poderes y que los utilice como instrumento de opresión o de forma arbitraria. *Rexach v. Ramírez*, supra, pág. 145.

### B. Patria Potestad

Por otro lado, resaltamos nuevamente que el derecho de un progenitor a ejercer la patria potestad sobre sus hijos está anclado al derecho constitucional norteamericano y local. A nivel federal, la Decimocuarta Enmienda de la Constitución de Estados Unidos garantiza que ninguna persona será privada de su vida, libertad o propiedad sin el debido proceso de ley. Es a través de esta enmienda que se examina, mayormente, *la patria potestad.* Id.

Por su parte, la Carta de Derechos de la Constitución de Puerto Rico reconoce el derecho a la vida como un derecho fundamental del ser humano. Art. II, Sec. 7, Const. ELA, LPRA, Tomo I. Conforme a este principio, el Tribunal Supremo ha expresado que la obligación de los progenitores de proveer alimentos a sus hijos menores de edad es de índole constitucional y parte esencial del derecho a la vida. *Ríos v. Narváez*, 163 DPR 611, 617 (2004); *McConnell v. Palau*, 161 DPR 734, 745 (2004); *Maldonado v. Cruz*, 161 DPR 1, 12 (2004); *Martínez v. Rodríguez*, 160 DPR 145, 151 (2006); *Chévere v. Levis*, supra, pág. 533.

A su vez, el Artículo 589 del Código Civil de 2020, supra, sec. 7241, define esta obligación, exponiendo que "[l]a Patria Potestad es el conjunto de deberes y derechos que corresponden a los progenitores sobre la persona y los bienes de los hijos, desde que estos nacen hasta que alcanzan la mayoría de edad u obtienen su emancipación". El cuerpo normativo referido desglosa los deberes de los progenitores al ejercer este derecho, de la siguiente manera:

> Los progenitores tienen sobre el hijo sujeto a su patria
> potestad los siguientes deberes y facultades:

(a) velar por él y tenerlo en su compañía;

(b) alimentarlo y proveerle lo necesario para su desarrollo y formación integral;

(c) inculcarle valores y buenos hábitos de convivencia y el respeto a sí mismo y hacia los demás;

(d) corregirlo y disciplinarlo según su edad y madurez intelectual y emocional y castigarlo moderadamente o de una manera razonable; y

(e) representarlo en el ejercicio de las acciones que puedan redundar en su provecho y en aquellas en las que comparece como demandado.

Código Civil de 2020, supra, sec. 7242.

Además, señala que "[l]os progenitores pueden solicitar el auxilio judicial cuando se atenta contra su patria potestad o cuando se amenaza o está en peligro la integridad física, mental o emocional del hijo". Código Civil de 2020, supra, sec. 7243.

Lo cierto es que la patria potestad es el "conjunto de derechos y deberes que corresponde a los padres sobre la persona y el patrimonio de cada uno de sus hijos no emancipados, como medio de realizar la función natural que les incumbe de proteger y educar a la prole." *Rodríguez Mejías v. E.L.A.,* 122 DPR 832 (1988), citando a, J. M. Castán Vázquez, *La Patria Potestad*, Madrid, Ed. Rev. Der. Privado, 1960, págs. 9-10.

Esta obligación debe ser ejercida responsablemente en atención al mejor bienestar del menor. *Ortiz v. Meléndez,* 164 DPR 16, 26-27 (2005); *Vargas v. Soler,* 160 DPR 790, 803 (2003). En cuanto a esto último, entiéndase como el balance entre los diferentes factores que pueden afectar la seguridad, salud, el bienestar físico, mental, emocional, educativo, social y cualesquiera otro dirigido a optimizar el desarrollo del menor. Artículo 3(y) de la Ley para la Seguridad, Bienestar y Protección de Menores, Ley Núm. 246-2011,

8 LPRA ant. sec. 1101(3)(y).[35] El procurar el bienestar del menor constituye un pilar fundamental de nuestra sociedad, puesto que ha sido reconocido como parte integral de la política pública del Gobierno de Puerto Rico. *De León Ramos v. Navarro Acevedo*, 195 DPR 157, 169 (2016); *Franco Resto v. Rivera Aponte*, 187 DPR 137, 149 (2012).

Ahora bien, si los padres no cumplen con su obligación de ejercerla conforme el mejor bienestar de la prole, los tribunales podrán intervenir para restringir, suspender o hasta privarlos de su derecho, ejerciendo así su deber de *parens patriae.* Como la patria potestad está subordinada al ejercicio del poder de *parens patriae* del Estado por medio de los tribunales, el factor determinante para ejercer esa autoridad es el bienestar del menor. *Chévere v. Levis, supra,* pág. 538; *Ex parte Torres*, 118 DPR 469, 483 (1987).

Así pues, para interrumpir la patria potestad de los progenitores, el tribunal tiene que privarlos por alguna de las circunstancias específicas señaladas en ley. Esto se debe a que el ejercicio de la patria potestad sobre los hijos se encuentra inexorablemente protegido por la Constitución del Estado Libre Asociado de Puerto Rico. El asunto de la suspensión o privación de la Patria Potestad lo atiende nuestro Código Civil de 2020, supra. Cuando un progenitor es suspendido de ejercer la patria potestad, "pierde, mientras dura la suspensión, el derecho a tomar las decisiones sobre la persona y los bienes de su hijo que haya determinado el tribunal. Sin embargo, retiene el derecho a relacionarse con él en las condiciones que le reconoce este Código, así como la obligación de alimentarlo y de velar por su bienestar". Artículo 613 del Código Civil de 2020, supra, sec. 7313.

---

[35] Derogada. Sin embargo, es importante resaltar que al apelante se le radicaron cargos al amparo de la Ley 246-2011.

Sin embargo, a un progenitor se le priva permanentemente de ejercer la patria potestad cuando "el Estado demuestra un interés apremiante *y que no existe un medio menos oneroso* para buscar el bienestar del hijo que la suspensión o privación de la patria potestad". Artículo 614 del Código Civil de 2020, supra, sec. 7314. (Énfasis nuestro).

Relevante a la controversia de autos, el Código en cuestión provee las causas por las que se le puede privar a un progenitor de la patria potestad. Entre ellas, se encuentra:

(a) causar daño, o poner en riesgo sustancial de sufrir daño o perjuicio predecible, a la *salud física, mental o emocional del menor*;

[…]

(h) incurrir en conducta que, de procesarse por la vía criminal, constituiría los delitos que se enumeran a continuación:

[…]

(11) *agresión sexual*, según estatuido en el Código Penal de Puerto Rico;

Artículo 615 del Código Civil de 2020, supra, sec. 7322. (Énfasis nuestro).

### C. Peso de la Prueba

Por ser parte del análisis de los errores en el recurso que nos ocupa, discutiremos brevemente la norma jurídica que reviste el peso de la prueba, en casos de patria potestad. Nuestro Alto Foro ha establecido que "cuando se trata de la negación de un derecho fundamental [...] el debido proceso de ley exige que el valor y suficiencia de la prueba sean medidos con un criterio más riguroso que el de la preponderancia de la prueba". *In re Caratini Alvarado*, 153 DPR 575, 584 (2001). Los procedimientos de privación como el de autos, matizados por el derecho constitucional a ejercer la patria potestad, deben ser evaluados bajo el crisol de un estándar de prueba más riguroso.

A esos efectos, la Corte Suprema federal se expresó en el caso de *Santosky v. Kramer*, 455 U.S. 745 (1982). En el precitado caso, el Alto Foro federal resolvió que cuando la patria potestad de los progenitores esté en controversia, se deberá aplicar el estándar probatorio de **prueba clara, robusta y convincente**. *Santosky v. Kramer*, supra, pág. 769. En su dictamen, el caso mencionado indicó que "antes que el estado prive de manera permanente e irrevocable a un padre de sus derechos sobre su hijo, el debido proceso de ley requiere que el Estado apoye sus alegaciones con prueba clara y convincente". Id. (Traducción nuestra).

Este estándar de revisión lo define nuestro más alto foro en los siguientes términos:

> [...] la prueba **clara, robusta y convincente** es un estándar intermedio de suficiencia de la prueba que, en esencia, es más exigente que el comúnmente aplicado estándar de preponderancia de la prueba en casos civiles, pero que, a su vez, es menos riguroso que la prueba establecida más allá de duda razonable. [...] hemos descrito la prueba clara, robusta y convincente como aquella evidencia que produce en un juzgador de hechos una convicción duradera de que las contenciones fácticas son altamente probables.
>
> *OEG v. Martínez Giraud*, 210 DPR 79, 93-94 (2022).

Además, se ha descrito que la evidencia clara y contundente es aquella que "contunde, golpea o magulla [...] lo que impresiona vivamente y persuade".[36] Referente a la controversia que nos ocupa, este estándar intermedio, en los casos civiles, "se usa cuando está por el medio un derecho demasiado fundamental para permitir ser afectado por la sola preponderancia de prueba". E. L. Chiesa Aponte, *Reglas de Evidencia de Puerto Rico 2009: Análisis por el Profesor Ernesto L. Chiesa Aponte,* pág. 101 (2009).

---

[36] II Guillermo Cabanellas, Diccionario Enciclopédico de Derecho Usual 363 (21ra ed. 2006).

Resulta inescapable concluir que los derechos que emanan de la maternidad y la paternidad se consideran fundamentales en ambas jurisdicciones. El caso normativo federal expresó que "el deseo y derecho de un progenitor biológico a relacionarse, cuidar, custodiar y manejar su prole es un interés mucho más valioso que cualquier derecho propietario". *Santosky v. Kramer*, supra, págs. 758–759. (Traducción nuestra).

**III.**

Por estar relacionados entre sí, y vinculados al debido proceso de ley, discutiremos los errores señalados por el apelante de manera conjunta. Vigoreaux plantea, en esencia, que el Foro apelado abusó de su discreción al privarle de la patria potestad de JJVL, por incumplir con el estándar probatorio para ello. *Le asiste razón.*

Si bien es cierto que elevar el escudo del debido proceso de ley no hace a una parte automáticamente acreedora de auxilio judicial, este Tribunal está obligado a ejercer la debida revisión cuando un error de esta naturaleza se levanta.

Como explicáramos previamente, la *patria potestad* es un derecho de rango constitucional que reviste las relaciones paternofiliales. Sin embargo, en busca del mejor interés de los menores de edad, nuestra jurisdicción reconoce ciertas instancias en el que el Estado, ejerciendo su deber de *parens patriae*, puede privar a un progenitor de esta. Así, y relevante a la controversia que ahora nos ocupa, nuestro Código Civil de 2020, supra, dispone que antes de privar a un individuo de la patria potestad, el Estado está obligado a demostrar un interés apremiante que no pueda ser atendido por un medio menos oneroso. Además, incluye, como una de las justificaciones para la privación, que el progenitor este causándole daño emocional, mental o físico al menor.

Ahora bien, por ser el derecho en cuestión uno fundamental, la jurisprudencia, clara y sin ambigüedades, ha establecido que el

Estado debe demostrar alguna de las causales para la privación de patria potestad mediante prueba clara, robusta y convincente, ***por la seriedad de este interés.***

Ahora bien, el TPI-Bayamón, luego de celebrar una vista por video conferencia, en la que solo se dilucidaron cuestiones de derecho, privó al apelante de la patria potestad de JJVL. En su *"Sentencia"*, el foro mencionado justificó su decisión al amparo del inciso (a) del Artículo 615 del Código Civil de 2020, sec. 7322. En su dictamen, el Foro sentenciador indicó que "[e]s un hecho indubitado que la parte demandada ha causado daño, además de poner en riesgo la salud mental y emocional del menor [...]".[37]

Luego de evaluar la normativa en derecho que engloba la patria potestad, justipreciamos que el Foro primario incumplió con el estándar probatorio para tomar esta determinación. Aunque las alegaciones que fueron hechas en contra del apelante, de haber sido ciertas, pudieron haber afectado a JJVL emocional y mentalmente, el TPI-Bayamón no dispuso de ningún método probatorio a su alcance para evaluar la probable veracidad de lo alegado por la representación legal de la apelada. Es decir, luego de escuchar que JJVL estaba siendo alegadamente atendido por profesionales de la salud mental a consecución del presunto daño que la situación con el apelante le causó, el TPI-Bayamón debió haber evaluado el testimonio de JJVL o de alguna prueba pericial, antes de tomar la drástica decisión de privar a Vigoreaux de la patria potestad. ***Recalcamos que ante el Foro primario no se solicitó un mero remedio interlocutorio, sino la privación irrevocable de un derecho constitucional.***

Tan es así, que la misma representación legal de la apelada, en varias instancias durante la vista, instó al TPI-Bayamón *a que*

---

[37] Apéndice del Recurso, pág. 30.

*entrevistara a JJVL*. Durante una de sus intervenciones, la apelada, por conducto de su representación legal, expuso lo siguiente:

> "Así de grave es esto. Y... y... aquí el sabe que el tribunal tiene esa sensibilidad. ***Por eso es que lo debe entrevistar***. La madre podrá tener su dolor y expresárselo a este tribunal y decir lo que ella conoce de propio y personal conocimiento. Pero usted tiene un hijo ahí de 17 años que solicitó protección y que se la dieron. Y no son hechos cualquiera (sic) Juez. Esto es grave. Y la consecuencia legal es la que está solicitando nuestra cliente. La privación de la patria potestad bajo el articulado 615 con los documentos que ya el tribunal tomó como exhibits".[38]

También, es preciso señalar que la apelada, durante la celebración de la vista, reconoció que el estándar de *prueba clara, robusta y convincente* no se satisface, sin que el Tribunal tomara medidas adicionales. A esos efectos, expuso lo siguiente:

> [...] y que lo único que le faltaría a este tribunal para poder completar ese criterio de prueba clara, robusta y convincente que habla el Artículo 611 ***es que entreviste este joven***.[39]

La remoción de la patria potestad del recurrente fue un remedio drástico. El proceso judicial que produjo la privación nos compele a concluir que el TPI-Bayamón incumplió con el debido proceso de ley. Entendemos que para llegar a la conclusión que llegó el Foro apelado, requirió que pasara prueba que demostrara que las contenciones fácticas sobre el daño causado a la salud mental, emocional o físico del menor eran altamente probables. Además, en su momento, el Foro apelado podrá determinar sobre las alegaciones de agresión sexual.

**IV.**

Por los fundamentos antes expuestos, *revocamos* la *"Sentencia"* apelada, *devolvemos* los procedimientos al TPI-Bayamón

---

[38] Transcripción de la Prueba Oral, Vista del 30 de noviembre de 2023, pág. 27.
[39] *Id.* pág. 26. (Énfasis suplido).

KLAN202400122                                                                            17

para que *celebre una vista evidenciaría de manera presencial, de conformidad con lo aquí resuelto.*

Lo acordó y manda el Tribunal, y certifica la Secretaria del Tribunal de Apelaciones.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones